*521
 
 Marshall, C. J.
 

 It must first be determined in this case whether a withdrawal check upon a savings account is within the meaning and the true intent of Section 713, General
 
 Code;
 
 that is to say, whether it is “a check drawn by a depositor.” This presents a question of no difficulty. Any distinctions sought to be made between the form of the withdrawal check and the ordinary check upon a cheeking account are purely technical, as an examination of the withdrawal check will clearly disclose. The withdrawal check was signed by the depositor, and it was an order upon the savings department of the trust company to pay the cash to her. True, it might equally be said to be payable to the order of “cash,” which is only another form of making it payable to bearer. It is the practice of such institutions to honor withdrawal checks only by the payment of cash, and not to regard them as negotiable. Upon this point the record is not as clear as it might be, because the case was disposed of in the courts below upon demurrer to the petition, and the petition does not in detail set forth the rules of the savings department of the trust company. We are therefore limited to an examination of the withdrawal check, uninfluenced by any possible rules of the institution which might adversely affect the situation. It is difficult, however, to imagine any rules which could affect the withdrawal check otherwise than to render it nonnegotiable. Inasmuch as Mrs. Blodgett never attempted to negotiate it, and immediately employed it in the purchase of a draft by the same bank, that question cannot influence the result in this case. We are therefore of the opinion that the withdrawal check comes within the meaning and intent of Section 713, General Code.
 

 Section 713, the meaning and validity of which must be determined in this case, reads as follows: “In any case where any bank incorporated under the laws of this state or any unincorporated bank doing business
 
 *522
 
 within this state shall have presented to it for collection and payment, a check drawn by a depositor in such bank or unincorporated bank who at the time such check is presented to it for collection and payment has on deposit an amount equal to such check, if after the receipt thereof such bank or unincorporated bank shall charge the account of such depositor with the amount thereof and shall in payment thereof draw a draft upon another banking institution, which draft shall remain unpaid at the time that such bank drawing same is closed by the superintendent of banks of Ohio or by action of its board of directors or other proper legal action, in such event the assets of such closed bank shall be impressed with a trust for the payment of such draft, and the superintendent of banks of Ohio or any one legally charged with the liquidation of such closed bank, shall pay such draft as a preferred claim out of the assets of such failed bank.”
 

 While the point has never been decided by this court, as to whether the purchaser of a draft is entitled at common law to preferred payment for the amount thereof, if the bank of issue fails before the draft is paid by the drawee, it is established by the overwhelming weight of authority that the holder of the draft is a common-law creditor at common law, and such we believe to be the rule of reason, though it is not necessary to so declare in the instant case. It must have been assumed by the General Assembly to be the rule in Ohio, as otherwise there would have been no occasion for the announcement of a different rule in Section 713, General Code.
 

 The controversy as to the construction of this section turns upon the meaning of the expression “collection and payment.” There would be no controversy if the draft in each instance had been issued by the bank of issue in the transmission of funds held by the bank as the proceeds of a collection item. It is
 
 *523
 
 insisted by counsel for tbe superintendent of batiks that Section 713 was intended to apply only to collection items. It is his insistence that the word “collection” should be strictly construed, and that it was intended by the Legislature that the section should only apply where the bank is acting as a collecting agent, and therefore, in fact, has the funds, not as owner, but as a trustee of the proceeds of a collection for the benefit of the party for whom the collection has been made. It is indisputable that under such circumstances the bank would be a trustee, but in that event it would be wholly unnecessary to enact a statute to impress the fund with a trust, or to create a preference in payment. The very character of the transaction renders the bank an agent, and the person for whom the collection has been made a principal. This was declared in
 
 Jones
 
 v.
 
 Kilbreth,
 
 49 Ohio St., 401, 31 N. E., 346. It must be presumed that the Legislature did not merely intend to declare a well-settled principle, but that its purpose was to remove a difficulty theretofore existing by making a change in the well-settled rule. If the word ‘ ‘ collection’ ’ stood alone in the section, it would easily be capable of the interpretation insisted upon by the superintendent of banks. But taken in connection with the word “payment” it is necessary to give the word “collection” an exceedingly narrow definition in order to adopt that construction. If the legislative intent had been that which is contended for by the superintendent of banks, the Legislature would have used apt language to express that intent. A careful reading of the entire section must convince that the Legislature used apt language to express the opposite intent. "We are of opinion that the language employed is not ambiguous. The expression “collection and payment” covers the act of the depositor in obtaining a part of that which is due to him from the bank, and also the act of the bank in delivering to the depositor a part of the obli
 
 *524
 
 gation which, the bank owes to him. “Collection and payment” expresses the process of collection by the depositor and payment by the depositary. Applying that meaning to the expression and the logical construction of the section which follows from thát definition, the section covers every instance where a draft is purchased by a depositor by issuing and delivering to the bank a check against his own account, whether in the checking account, or a savings account. It is the spirit of the statute that, when the check drawn by the depositor shall be
 
 actually
 
 charged to the account of such depositor, the draft drawn by the bank upon its funds in its depositary shall be
 
 constructively
 
 charged against its deposit. If the bank upon which the draft is drawn were in sufficiently close proximity to the bank of issue to permit an immediate presentment for payment, and actual payment, no one would question the right of the payee to retain the proceeds. Or, if the bank of issue were to remain open for business a sufficient time to permit the draft to be actually presented and paid, no one would question the right of the payee to retain the proceeds. Both of these propositions of course assume that fraud has not tainted the transaction. Both of these propositions are sound at common law, and do not require the aid of a statute. The statute gives effect and legality to the withdrawal of funds from a bank which does not have the cash in its vaults, under circumstances and by methods which would otherwise result in litigation. It is the declared purpose of the statute, as expressed in its title (112 Ohio Laws, 238), to “expedite and simplify the payment of checks.” This purpose is plainly promoted by providing in effect that when the check is
 
 actually
 
 charged, the draft shall be
 
 deemed
 
 to be charged, and the entire transactiomas to all parties made immediately effective. In other words, the transaction is regarded as though executed by telegram or
 
 *525
 
 telephone, and. time and space did not intervene. This must have been the legislative intent.
 

 Does the statute thus interpreted contravene constitutional limitations? It is claimed that it is violative of Section 2, Article I, of the Constitution, which guarantees the equal protection of the laws, and of Section 26, Article II, which requires that all laws of a general nature shall have uniform operation throughout the state. More particularly, it is argued that such an interpretation renders the statute discriminatory against cashier’s checks. It only operates as a discrimination because the bank lends its deposits to other banks instead of keeping them at all times in its vaults. If the cashier’s check were immediately presented and paid, a legal preference would be obtained. This could not happen in the ordinary course, because there would be no occasion to issue a cashier’s check in exchange for an ordinary check, if the bank had sufficient currency in its vaults to honor the check. It is not the province of the court to justify this statute, and yet it must be said in its favor that it encourages the use of depositaries by banking institutions, thereby keeping money in active use instead of accumulating in the vaults. It is also in harmony with modern methods of executing commercial transactions by means of credit exchanges instead of payments in currency. It permits a country bank to deposit its reserves in distant banks, and thereby seek the security of sound financial institutions in metropolitan centers, and yet preserve the liquidity which is essential in times of financial stress. This section does result in a discrimination between a cashier’s check and a draft drawn upon another bank. For the reasons already stated, this discrimination is upon a sound and reasonable basis, in the interest of expedition and simplicity in banking transactions, and to encourage the use of credits in the execution of such transactions. "We are of the opinion that the
 
 *526
 
 statute does not contravene any of the inhibitions of the Constitution.
 

 The judgment of the Court of Appeals in each case will be affirmed.
 

 Judgments affirmed.
 

 Matthias, Day, Allen and Stephenson, JJ., concur. Jones and Kinkade, JJ., not participating.