## FULTON v BYRNS

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 20, 1933

L. M. Cailor, Youngstown, for plaintiff in error.

Carl Armstrong, Youngstown, for defendant in error.

ed, Mr. Byrns would only be a common creditor of this bank. If, on the other hand, by the issuing of this cashier's check the amount of the check was segregated for the benefit of paying the check, or, in other words, if held in trust by the bank, he is entitled to a preferred claim. The determination of the relationship in which the payee of the check stood to the drawer bank will determine this question.

In the work of Michie on Banks and Banking, the 6th Volume, on page 249, §13, it is said:

"A banker's check, as popularly understood, is a check, draft or other order for payment of money, drawn by an authorized officer of a bank upon either his own bank or some other bank in which funds of his bank are deposited."

Further in that same section it is said: ."A cashier's check is a bill of exchange drawn on a bank by itself, accepted in advance by the act of its issuance, and not subject to countermand by the payee after the indorsement, having the same legal effect as a certificate of deposit, or a certified check, and the deposit is represented by · the check passes to the credit of the holder of the check, who is thereafter a depositor to that amount."

The same work. in the 5th Volume, refers to the same proposition. We will refer to it briefly:

"A cashier's check is the bank's own check which is issued by the cashier at the request of a depositor against whose account it is charged. Such check is strictly commercial paper and every holder is presumed to be a holder for value, and the burden of showing that he is not a bona fide holder rests upon those who assert it. Such a check is the substantial equivalent of a certified check, and the deposit represented by the check passes to the credit of the checkholder, who is thereafter a depositor to that amount."

And referring further to the 5th Volume of R.C.L., on page 483, it is said:
"A cashier's check is entirely different in nature from an ordinary check drawn by a depositor of the bank. It is a bill of exchange drawn by the bank upon itself and is accepted by the act of issuance. The bank in such case is the debtor and its obligation to pay the cashier's check is like that of the maker of any other negotiable instrument, payable on demand."

## OPINION

By POLLOCK, J.

If the relationship existed between Byrns and the Sebring bank on the morning of the 2nd, after the certificate account had been charged with the amount due on the certificate and the cashier's check was issu-

We might refer to a number of adjudicated cases on which the authorities we have referred to are based, but we will not take time now to even name them. We feel that the short quotation from Ruling Case Law states the principle which determines the legal relation of the parties in this action. It is a bill of exchange, or, as commonly called now, a draft, which is issued by the cashier, the banker, upon its own bank. That bank is both the drawer and drawee. The issuing of the check is an acceptance by the drawee, the bank. Upon the acceptance of a bill of exchange by the bank upon which it is drawn, the relation between the parties is entirely changed. The drawee becomes the debtor to the payee and the drawer is relieved after its acceptance. That was the case when this check was issued and handed to Byrns, the Sebring Bank being both drawer and drawee, the bank becoming the debtor and Byrns the creditor. At the time Mr. Byrns received the cashier's check it was accepted by the bank. Before acceptance the drawer bank agreed to pay the bill of exchange. The same relation existed between the Sebring bank and Byrns when the cashier's check was delivered as would have existed if the Sebring Bank in the place of drawing this check on its own bank had drawn a bill of exchange on some other bank in which it had the funds and that bank had accepted the bill of exchange but not yet paid; the other bank would become the debtor and Byrns would be the payee of that bank.

Under the legal principle controlling the transaction when Byrns accepted this check, he became a creditor of this bank and the bank became his debtor. We think the only relation existing between these parties at the time the bank was taken over by the Superintendent of Banks was one of debt and credit, or payor and payee.

Now, referring further, if it is necessary, from the same section in R.C.L.

"When such a check is given to a depositor to cover the amount of a withdrawal, it is merely an acknowledgment of an indebtedness on the part of the bank to the payee of the other. The change thereby made is not in the nature of the debt but is the evidence of it. Hence, such a check is held not to be an assignment to the depositor of the amount therein specified as against a receiver taking possession of the property of the bank by order of court before the check is presented to it for payment."

We think as far as these authorities are concerned that Byrns is only a common creditor.

Our attention has been called to the cases of Fulton, Superintendent of Banks v B. R. Baker-Toledo Company, and Fulton, Superintendent of Banks v Blodgett, 182 NE, 513. These two cases were disposed of by the Supreme Court in one opinion. One is from Montgomery County and the other from Lucas County, and they are both cases where the creditor of the bank went to the bank and asked for a New York draft or bill of exchange on New York banks, and in each case the draft was issued. Before either draft was presented to the New York bank, the drawer of the bill of drafts had closed its doors and been taken over by the Superintendent of Banks. The Superintendent of Banks refused to allow the claims of the holders of the bills of exchange to have preferred claims. The question went to the Supreme Court and the Supreme Court holds that in such a case where a bill of exchange is drawn upon a bank having the funds to pay the bill and before presenting it to the drawee in due course the drawer closes its doors, the bank issuing the bill of exchange held in trust funds in the amount of the bill of exchange, or rather the funds in the bank upon which it was drawn were transferred in theory to the payment of the draft and were not paid by drawee, for the only reason that the drawer had closed its doors before the bill of exchange was presented. The holder was entitled to a preferred claim. The difference between the case we have and the cases before the Supreme Court is that the drafts in those cases were not accepted by the drawee before the drawer was taken over by the Superintendent of Banks, while in the instant case the cashier's check was accepted at the time of delivery before the Sebring bank closed. We do not think that the principle which controlled in the cases before the Supreme Court determine the legal rights of the parties in the case now under consideration.

Our attention was also called to Union Trust Company v Simpson, and Union Trust Company v Asphalt Paving Company, two cases decided by the Lucas County Court of Appeals, found in 14 Ohio Law Abstract, 674, and Schuky v Fulton, 14 Ohio Law Abstract, 686. In both cases certified checks were issued and before their presentation the banks closed and the holders of the checks were allowed in these cases to be preferred creditors. The holders of the certified checks would have been in the

same condition as Byrns if the payee in the certified check had presented it and gotten credit in his own name. We do not think that the decision we are entering in the instant case is in conflict with the decision in the cases above referred to. The Citizens Bank of Sebring was both the drawer and drawee. The mere issuing and delivering of the cashier's check is an acceptance and it becomes the payor and the holder the payee. The legal relation between Byrns and the Sebring Bank is the same as between any other creditor and debtor of the bank.

It has been urged that this case is controlled by §§712, 713 and 714, GC. We do not think that these sections have anything to do with the question. It is controlled by the common law rule, but §711 GC does; that is, the certified check at the time the bank closed was in the condition referred to in §711 GC. As we have stated, the check was mailed by the Federal Reserve Bank in Cleveland on the 5th of October. The evidence is that mail in the post office in Cleveland on the 5th would reach Sebring some time in the forenoon of the next day. The check was sent on the 5th, and the presumption is that it followed the usual course and was delivered in the usual time, so that the cashier's check under this rule was in the bank at Sebring some time during the 6th. The bank was open until the evening of the 7th, but it was not charged paid by the bank. §711 GC provides, in substance, that a check reaching the bank on which it is drawn, as we think this one did, where there are funds in the bank to pay, but it is not paid, and the bank closes its doors and goes into the hands of the Banking Department, that whoever is in charge of the closed bank shall return such checks to the bank or person from which it is received. It is presumed that this was done by the person in charge of the bank on October 8th. The probabilities are that the Sebring bank did not open its mail either on the 6th or 7th and it was returned to the Federal Reserve.

The judgment of the court below is reversed and final judgment entered. Exceptions.

Judgment reversed.

FARR and ROBERTS, JJ, concur in the judgment.