# AMERICAN SECURITY & TRUST COMPANY *v.* KAVENEY.

PLEADING; PHYSICIANS AND SURGEONS; EVIDENCE; OBJECTIONS AND EXCEPTIONS; WITNESSES; VERDICT.

1. The effect of a bill of particulars is to limit the plaintiff's demand and it restricts his proof to the subject-matters specified. He is not limited to direct proof of each and every item on the particular date specified, but may prove as many of the specified matters as may be possible by the best evidence obtainable.

2. The evidence is sufficient to authorize a verdict that medical services by catheterizing and irrigating the bladder of a decedent were performed as specified in a bill of particulars, when witnesses testified to declarations made by the decedent during his lifetime that the services were rendered, and some of them testified that they had been at the decedent's home on visits and had waited for him when he went from the room with the physician for an operation, although the testimony

of the physician and his books were rejected, and it does not appear that any witness was actually present during the operations.

3. An exception reserved to so much of the charge as is "inconsistent with defendant's refused prayers," even if available under any circumstances, presents no question where the prayers were rightly refused.

4. The failure of a physician, in an action brought against the executor of a deceased patient to recover for surgical and medical services, to call his own wife or members of the deceased's household as witnesses to substantiate his claim, does not raise an inference that their testimony would have been unfavorable, especially where it does not appear that they had any direct knowledge of the services.

5. The denial of a motion for a new trial, based on affidavits charging and denying the return of a "quotient" verdict, rests in the sound discretion of the court, and is not the subject of review.

6. It is not within the province of the court of appeals of the District of Columbia to reverse a judgment for the reason that the verdict is excessive.

No. 2402.   Submitted October 14, 1912.   Decided November 4, 1912.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover the reasonable value of services rendered by the plaintiff as physician and surgeon to defendant's testator.

*Affirmed.*

The facts are stated in the opinion.

*Mr. Nathaniel Wilson, Mr. Clarence R. Wilson, Mr. W. W. Bride,* and *Mr. Paul E. Lesh* for the appellant.

*Mr. George P. Hoover* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The American Security & Trust Company, defendant below, as executor of the estate of John E. Herrell, deceased, appeals from a judgment for the sum of $27,476 recovered in an action in assumpsit by Joseph J. Kaveney, plaintiff, for the reasonable value of surgical and medical services rendered to the said Herrell.

The declaration contains the ordinary common counts, to which is attached a bill of particulars, or itemized account under the head of "extraordinary medical and surgical services." Of these, items between July 7 and September 2, 1906, amounting to $119, were abandoned. One item for sixteen days' attendance at Elkton, Virginia, charged at $100 per day, was retained. The remaining items are for catheterizing and irrigating the bladder of the invalid from three to five or more times a day, from September 2, 1906, to March 30, 1909, at a charge of $10 per operation. The entire amount of the demand, including the $1,600 item aforesaid, was $37,680. Defendant replied with a plea of non-assumpsit.

The undisputed evidence shows that John E. Herrell died March 30, 1909, aged eighty years, and had been afflicted for some years with a serious enlargement of the prostate gland. He had neither wife nor child, and was a man of considerable means; president of a national bank and an officer of other corporations. He had a female cousin who kept house for him; also several servants. His home was in Washington. Plaintiff was a competent young physician and surgeon, aged thirty-one years, and had been practising his profession in Washington for a few years. During his attendance upon the invalid he married Miss Herrell, the housekeeper. During the last year or more of the invalid's life, plaintiff occupied a room in his house so that he could be promptly called when needed. His office was in another building near by. Mr. Herrell refused to permit plaintiff to keep a telephone in the house for fear that he might be called out at night by other patients.

Plaintiff offered himself and his book of entries, from which the bill of particulars had been transcribed, as evidence in support of his demand. Both were excluded on objection of defendant. A male witness who had served as nurse of and had been in constant attendance upon the invalid from February 22 to March 30, 1909, testified to the performance of plaintiff's services as charged during that time, day and night. A number of witnesses who had been intimate friends and asso-

ciates of Mr. Herrell for many years—one of them for six-teen years cashier of the bank of which Mr. Herrell had been president—testified to his condition during the time embraced. in the bill, and to his frequent statements as to the character of his ailment, the necessity for the catheterization and irriga-tion of his bladder, and the performance of the same by the plaintiff from three to five times per day. He could not other-wise relieve his bladder. The testimony tended to show that. plaintiff called for the invalid at the bank constantly in his automobile, and took him home for the necessary service; also that the invalid often praised the skill and efficiency of plain-tiff, and attributed the saving of his life to plaintiff's attend-ance upon him at Elkton, Virginia, in August, 1906. Plain-tiff introduced a large number of surgeons and physicians. who explained the nature of the disease and the character of the operations required. They testified that the reasonable value of the operations was $10 for each, and also that $100 per day was a reasonable charge for the attendance at Elkton.. A less number of similar witnesses testified for defendant that. the reasonable value of the services was from three to five dol-lars each, and of the attendance at Elkton, $50 per day. The total amount of plaintiff's demand insisted upon was $37,680,. and the verdict returned was for $27,476.

The first contention is that the court erred in refusing a. special prayer of defendant to the effect that plaintiff had pro-duced no evidence sufficient to authorize a verdict that he had performed the particular services as specified in his bill of par-ticulars from September 2, 1906, to February 22, 1909, and that he was not entitled to recover for any services beyond $3,730, the same being for services rendered before September 2, 1906, and after February 22, 1909. In this view of the pleading and evidence we cannot concur. The effect of a bill of particulars is to limit the plaintiff's demand, and restrict his. proof to the subject-matters specified. He is not limited to direct proof of each and every item on the particular date speci-fied, but may prove as many of the specified matters as may be possible by the best evidence attainable. Plaintiff and his

books were rejected, and it can hardly be supposed that such services were performed in the presence of witnesses. There was no evidence from which it can be inferred that a witness was actually present, save during the period of the nurse's attendance towards the last. Plaintiff's witnesses had testified to the invalid's declarations that the services were performed from three to five times daily during the period of the account, and some of them had been at his home on visits and had waited for him when he went from the room with the plaintiff for an operation. The court properly submitted the case to the jury, telling them that they could not take the verified bill of particulars as evidence of anything whatever, but must determine the case upon the general evidence submitted. Some objections have been urged on argument to expressions in the charge, but these have not been considered, because the only exception reserved to the charge was, in general terms, to so much of it as is "inconsistent with defendant's refused prayers." As they were rightly refused, no question of inconsistency with them remains; even if so general an exception could be available under any circumstances. Another contention is that the court erred in refusing the defendant's special instruction to the effect that, in determining whether plaintiff actually rendered services of the nature, magnitude, and frequency claimed in the declaration, the jury may, if they see fit, infer from the fact that the plaintiff failed to call as witnesses his wife, or rather members of his wife's household, "who, it appears from the testimony herein, must have known of such services, if such services were actually rendered; that the testimony of such persons would have been unfavorable to the plaintiff's claim, had they been called as witnesses." There was no error in refusing the instruction. It is unnecessary to review the cases in which the failure to call a witness peculiarly cognizant of the fact in issue has been held a suspicious circumstance, warranting an inference that his evidence would have been unfavorable to the party, who could and should have produced him. The case at bar is not in that category. All that a plaintiff in an action of this kind is required to do is to make out a prima facie

case of the services rendered and their reasonable value. This he attempted to do with evidence that was uncontradicted, save by experts, in respect of the reasonable value. Moreover, there was nothing in the evidence to warrant the inference that plaintiff's servants, much less his wife, had any direct knowledge of the services rendered by the plaintiff. Even had it been shown that the plaintiff's wife had this direct knowledge, the plaintiff is not to be punished for refraining from introducing her as a witness to such services.

, The last contention is that the court erred in refusing to order an inquiry into the proceedings in the jury room, and in refusing to set aside the verdict notwithstanding the prima facie showing that the verdict was irregularly and illegally returned, and was in fact a "quotient" verdict. After the return of the verdict, the defendant, in support of its motion for new trial, presented the affidavit of one Frederick A. Linger. This was in substance that Frederick A. Heine, a member of the jury, stated to him that the jury were sometime in hopeless disagreement as to the amount of their verdict for the plaintiff, and had agreed that each juryman should name the amount of his verdict, and that the sum of these amounts should be divided by twelve, and the quotient should be stated as the verdict; and that this was done. Plaintiff moved to strike out this affidavit, and pending that motion there was filed an affidavit by Heine and by the foreman, Cropley, and leave was prayed by plaintiff to file one joined in by three other jurors. Heine's affidavit was to the effect that he had been accosted by Linger, who asked him: "Was it a fact that you all came to a verdict by each putting down the amount and dividing it by twelve?" To this affiant replied, "That is a question I do not care to answer." Linger replied: "Your foreman, Cropley, told me so, and I want to find out whether it is so or not." Affiant said: "If he told you so, he told you no lie." The three jurymen's affidavit was to the effect that the jurors were all for returning a verdict for the plaintiff, but differed as to the amount of the finding. A suggestion was made that each should write his amount upon a slip of paper. These were added together, and when the quotient

was obtained by dividing the gross sum by twelve, each juror then agreed upon that sum and returned their verdict in that amount; but that there was no previous agreement to adopt that sum as a verdict; no one had agreed in advance to adopt that as his verdict, and the adoption afterwards was through the exercise of the free and unbiased judgment of each juror. The affidavit of Cropley was stated in substance that he had been accosted by Linger, who wanted to learn about the finding of the verdict; that he simply said the jury had returned a flat verdict, and declined further conversation. The hearing of the several motions was postponed to a later day of the term. After hearing, the court denied plaintiff's motion to strike out Linger's affidavit and plaintiff's motion for leave to file the affidavit of the three jurors before mentioned. He expressed the opinion that the affidavit of Linger did not raise a probability of improper action on the part of the jury, and then denied the motion for new trial. As said in *Mattox* v. *United States,* 146 U. S. 140–148, 36 L. ed. 917–920, 13 Sup. Ct. Rep. 50, there are exceptional cases in which the sworn statements of jurors will be received to impeach their verdicts; but if such affidavits are received and considered by the court, and the motion for new trial is, in the exercise of a sound discretion, denied, the exercise of that discretion is not the subject of review in an appellate court. In that case the judgment was reversed because the court refused to receive and consider an affidavit charging gross misconduct in the jury room on the part of the bailiff in charge, who made damaging statements concerning the defendant, and introduced a newspaper commenting upon the testimony at the trial, and stating that defendant's friends had given up all hope of any result but conviction. The court declined to exercise any discretion in the matter whatever. The affidavit relied on by the defendant in this case was not that of a juror, but an outsider, who stated the result of a conversation with a juror, which was denied. His statement of an alleged conversation with the foreman was expressly denied by the latter. The court did receive and consider these affidavits of Linger, Heine, and Cropley, and in the exercise of his discretion, be-

lieving that they did not warrant further investigation of the conduct of the jury, overruled the motion for new trial. His action is not the subject of review. We refrain from any discussion of the question of permitting jurors to impeach their verdict, as there is no occasion for it. The verdict may be excessive, but that was a question for the trial court upon the motion to set it aside. It is not within the province of this court to reverse a judgment for the reason that a verdict is excessive. The judgment is affirmed, with costs.               *Affirmed.*