## WHITTALL et al. v. MURRAY FURNITURE CO.

### No. 572.

District Court, M. D. Pennsylvania.
May 14, 1930.

Jenkins, Turner & Jenkins, of Wilkes Barre, Pa., and David R. Crossgrove, of Lewisburg, Pa., for receivers.

Robert J. Doran and Reynolds & Reynolds, all of Wilkes Barre, Pa., for excepting creditors.

WATSON, District Judge.

The exceptions filed to the master's report, which distributes the funds in the hands of the receivers of the Murray Furniture Company, raise six questions: (1) Whether the claim of the "Walk-on-Rug Company" was properly allowed; (2) whether the amount allowed to H. N. Rust, one of the receivers, is excessive; (3) whether the amount allowed to Chas. W. Galloway, one of the receivers, is excessive; (4) whether the amount allowed to David R. Crossgrove, one of the attorneys for the receivers, is excessive; (5) whether the amount allowed to Fred V. Follmer as special master is excessive; (6) whether the amount allowed for stenographic services is proper.

1. On July 30, 1928, the Walk-on-Rug Company was the successful bidder for certain assets of the Murray Furniture Company as of June 19, 1928. The bid of the Walk-on-Rug Company was the sum of $90,000, with the condition that all sums received by the receivers for said assets or any part thereof, between July 19, 1928 and the date of the final confirmation of said sale, should

be allowed the Walk-on-Rug Company on said purchase price of $90,000. The sale which was made on those terms was confirmed finally and absolutely by the District Court on August 28, 1928. The amount received by the receivers for said assets of the Murray Furniture Company on account of sales, merchandise, collections of accounts, etc., between June 19, 1928, and August 28, 1928, was $44,086.12, which amount was paid over by the receivers to the Walk-on-Rug Company on the payment to the receivers of the sum of $90,000 by the Walk-on-Rug Company. The sale was conducted strictly in accordance with the order of the District Court. No exceptions were filed to any of the proceedings or to the confirmation. The amount paid to the Walk-on-Rug Company was not, of course, a claim against the Murray Furniture Company, but was to cover an adjustment in accordance with the terms of sale of the assets of the Murray Furniture Company by the receivers, and was in every way proper. The matter has been finally adjudicated. This exception is dismissed.

█ 2 and 3. The receivers were appointed May 19, 1928, and are still acting as receivers. Prior to August 28, 1928, the date of the final confirmation of the sale of assets of the Murray Furniture Company, which sale did not include certain assets of the Murray Furniture Company, consisting of real estate in Kingston, Pa., cash surrender value on certain life insurance policies, in which the Murray Furniture Company was the beneficiary, or certain stock in corporations, one of the receivers devoted his whole time to the receivership, and the other receiver devoted a large part of his time to the affairs of the receivership. Since August 28, 1928, the receivers conscientiously devoted a large part of their time to the affairs of the receivership in looking after the assets of the Murray Furniture Company which were not sold on August 28, 1928. The assets of the Murray Furniture Company consisted of furniture, phonographs and records, rugs and floor coverings, draperies and lamps, custom shop supplies, undertaking supplies, fixtures, balances on open book accounts shown by ledgers to amount to $41,403.25; balances on personal property lease agreements, shown by ledgers to amount to $127,295.86; real estate at Kingston, Pa., certain stock in corporations, and cash surrender values on life insurance policies. The receivers ran the business of the Murray Furniture Company for over three months, during which time they were successful in collecting a large number of accounts and were successful in turning many of the lease agreements into cash by refinancing and by other methods. All of this required energy and constant attention.

To secure a satisfactory bid for the assets of the business of the Murray Furniture Company in bulk was a difficult matter. After much effort, the best bids received were one of $47,900 by Fowler, Dick & Walker Company for the entire stock, fixtures, supplies, etc.; and one of $80,000 by the Walk-on-Rug Company for all the merchandise, fixtures, rights, franchises, leaseholds, etc., as per appraisal and inventory. The creditors would undoubtedly have approved the bid of $80,000 by the Walk-on-Rug Company. Solely through the efforts of the receivers the Walk-on-Rug Company was induced to increase its bid from $80,000 to $90,000, and at the same time agreed to take over the lease for the building occupied by the Murray Furniture Company, which lease provided for rental payments amounting to $2,500 per month, and did not expire until seven months after August 28, 1928. This meant a saving of $17,500, and was of much benefit to the creditors.

While the assets of the Murray Furniture Company, exclusive of real estate, stock in corporations, and cash surrender values on life insurance policies, were appraised by the appraisers appointed by the District Court at $245,319.72, Samuel T. Freeman & Co., Appraisers, of Philadelphia, Pa. recognized to be competent appraisers, placed an actual value on said assets of several thousand dollars less than the amount received by the receivers for said assets, which amount received was $135,965.24.

The receivership was conducted in an economical and efficient manner, and the efforts and attention given the affairs of the receivership by the receivers resulted in provision for a distribution to the creditors of from 18 per cent. to 25 per cent. and, were it not for the unusually efficient manner in which the affairs were handled, the results would probably have meant no payments whatever to the creditors.

From the evidence I conclude that the receivership was unusually well handled by the receivers, and that the amounts allowed by the master for services rendered by the receivers is not excessive. Exceptions 2 and 3 are dismissed.

4. On the 31st day of May, 1928, David R. Crossgrove, Esq., and the firm of Jenk-

ins, Turner & Jenkins, were appointed attorneys for the receivers. The firm of Jenkins, Turner & Jenkins was allowed by the master for its services the sum of $3,180, and no exceptions were taken to that allowance. In fact, the attorney for those who except to the allowance of the appraiser's fees and the attorney's fees to David R. Crossgrove stated at the hearing before the master on the audit of the account of the receivers that he considered a fee to the firm of Jenkins, Turner & Jenkins of $3,000 fair and reasonable.

David R. Crossgrove resides in Lewisburg, Pa., where he has his law office. The firm of Jenkins, Turner & Jenkins has its law office in Wilkes Barre, Pa., where the business and store of the Murray Furniture Company was located. It is apparent that the firm of Jenkins, Turner & Jenkins rendered a large part of the services, probably due to the fact that that firm was close at hand and available at all times for consultation and for services in connection with the preparation and drawing of papers, etc. David R. Crossgrove undoubtedly consulted with Chas. A. Galloway, the receiver, who resided in Lewisburg.

The fees allowed to receiver H. N. Rust exceeded those allowed to receiver Galloway, and, considering the statement rendered by David R. Crossgrove as to the services rendered by him in comparison with the statement of the firm of Jenkins, Turner & Jenkins as to the services rendered by it, the firm of Jenkins, Turner & Jenkins should receive a larger fee than David R. Crossgrove. David R. Crossgrove rendered his bill for services to Chas. W. Galloway, receiver, and not to both of the receivers.

Taking the amount allowed Rust for his services as receiver, $6,000, and the amount allowed Galloway for his services as receiver, $4,000, I think it proper that the fees to the firm of Jenkins, Turner & Jenkins and to David R. Crossgrove should be fixed in a similar proportion, and that David R. Crossgrove should be allowed the sum of $2,120 for his services as attorney. I feel bound to sustain this exception and to reduce the amount allowed to David R. Crossgrove from $3,000 to $2,120.

5. Fred V. Follmer was appointed by the District Court on the 5th day of August, 1929, to audit the account of the receivers, and to make report thereon to the court; to audit the claims filed with the referee, as set forth in the schedules attached to the peti-

tion, and such other claim as might properly be presented to him; to take proofs, and to return and report to the court the nature and extent of the claims or demands of said creditors, and what liens, if any, and the nature and extent thereof any of the creditors have against the property and assets of the defendant, or any portion thereof, and as to the preferences or priorities among the creditors and lienors, if any; to investigate the said mortgages mentioned in said petition, and to recommend to the court whether or not the claim of J. Rech Guckes should be paid in full, reassignment of said mortgage taken by the receivers, and foreclosure proceedings instituted thereon. He was also directed to take testimony and fix the compensation of the receivers and their attorneys.

Hearings were duly held before the master, and considerable testimony was taken. The master prepared and filed a full and complete report in which he took up and disposed of a number of legal questions and submitted schedules of distribution to creditors.

The records in cases in this district in which masters have been appointed under circumstances similar to those in this case for purposes similar to those for which Fred V. Follmer was appointed master, and where the work done was of a similar amount, in some instances show an allowance of compensation in excess of that allowed to the master in the account of the receivers in this case.

In Susquehanna Trust & Safe Deposit Co. v. United Telephone & Telegraph Co., Wm. C. McCabel, receiver, and Equitable Trust Co., No. 365 January term, 1923, in equity, the special master was allowed for his compensation $1,750.

In West Disinfecting Co. v. U. S. Paper Mills, Inc. and Courtney P. Winter, No. 521 October term, 1926, in equity, the special master was allowed for his compensation $2,000.

In Gordon Fuel Corporation v. Oak Run Coal Co., No. 415 March term, 1924, in equity, the special master was allowed for his compensation $3,650.

"The compensation of a master in chancery should be measured by the amount of work done, the time employed, and the responsibility assumed, having also in view the magnitude of the interest involved. It should be reasonable—perhaps liberal—but not exorbitant." *Finance Committee of*

Pennsylvania v. Warren (Kennedy et al. v. Warren) (C. C. A.) 82 F. 525.

Taking into consideration the amount of work done, the time employed, and the responsibility assumed by the master in this case, and considering also the amount allowed to special masters in this district in similar cases for similar services, I am of opinion that the compensation of $2,000 to Fred V. Follmer for his services as special master is not excessive. This exception is dismissed.

6. This exception is dismissed without comment.

The report of the master must be modified so as to reduce the amount of compensation allowed to David R. Crossgrove by the sum of $880. This sum is to be added to the amount to be distributed to the creditors. In other respects, the report of the master is confirmed, and the amounts allowed to the receivers, to the attorneys for the receivers, and to the master, shall cover compensation for all services heretofore rendered and here-after rendered in this case.