## ROBERTS v. UNITED STATES.

### No. 3309.

Circuit Court of Appeals, Fourth Circuit.

Aug. 1, 1932.

Lester S. Parsons, of Norfolk, Va. (Venable, Miller, Pilcher & Parsons, of Norfolk, Va., on the brief), for appellant.

Paul W. Kear, U. S. Atty., of Norfolk, Va. (H. M. Woodward, Asst. U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

T. C. Roberts, who with a number of others was convicted in the court below of conspiracy to maintain a nuisance in violation

of the National Prohibition Act, prosecutes this appeal. A number of his assignments of error do not comply with the rules of this court. The others present three questions for our consideration: (1) Whether there was sufficient evidence to connect him with the conspiracy alleged; (2) whether there was error in certain questions propounded to the witness C. A. Hood; and (3) whether there was error in overruling the motion for new trial made on the ground that a part of the jury, without the permission of the court, had viewed the premises where the crime was alleged to have been committed.

■■ On the first question, there can be no doubt as to the sufficiency of the evidence to establish the guilt of Roberts when considered in the light most favorable to the government, as it must be considered on motion to direct a verdict for defendant. The evidence shows that intoxicating liquor was being sold in the café owned and operated by Roberts; and, while he himself was not present in the café when the sales were made upon which the government relies, the conclusion is inescapable that he was the head and front of the illegal business there carried on. He had his desk in the taxi office next door to the café with a small connecting window between the two places of business. He had two telephones in the taxi office so arranged that by means of the connecting window they could be used from the café. Whisky sold in the café was brought from the direction of a nearby building in which a large quantity of intoxicating liquor was found together with a plant for aging, bottling, and labeling liquor. A wire from the taxi office to the building where the liquor was stored operated an electric signal in the latter. Aging apparatus found in the building was similar to that discovered at his home some months before, and the aging process was being carried on in the same way. The liquor sold in quart bottles in the café bore "Red Top" labels similar to the liquor in quart bottles found in the building. A quantity of similar unused labels was found at the bottling plant, and Roberts was shown to have made purchases of "Red Top" labels from a printer a short while before. Water for the operation of the boiler of the aging plant was furnished through rubber hose connected with a pipe on property which he had leased, and he paid for the water so used. It is admitted that sales of liquor were made by Roberts' employees in the café; and the circumstances to which we have referred were sufficient to justify the conclusion that such sales were but

transactions in a well-planned illegal business in which he and his employees were engaged.

■■ As to the question asked of the witness Hood, it appears that the witness King had testified to tracing the wire from the electric signal, or "buzzer," in the building where the liquor was found, across the tops of some intervening buildings and sheds to the taxicab office and to a switch in the office near the desk. The witness Hood was then called and testified to tracing the same wire into the roof of the taxicab office and to going into the office and seeing a wire connected with a switch or button and going up the wall through a conduit. On cross-examination he was questioned at great length about his observation of the wire. The court then asked the following question to which Roberts objected: "Q. Was there any doubt the wire that started from the button, that led from the taxi office, was the same one that led to the far building?" The witness answered: "No, sir, none at all. I climbed down off the roof and inside the center I found a receptacle right under where I traced it on top of the roof. As I say, I did not see it go through the roof. I could not do that without pulling it out and tearing up the roof and I did not tear up the roof, but left the wire there."

It is objected that this was opinion evidence; but we do not think so. The statement of the witness was as to a matter of fact based upon observation. It is true that he did not trace the wire through the roof; but when he saw it enter the roof and a wire emerge from a corresponding place on the under side, we think it is too great a refinement to say that he was merely expressing an opinion when he says that it was the same wire. 22 C. J. 527, 528. At all events, he gave the jury the benefit of the observations upon which his statement was based; and the defendant could not have been prejudiced thereby.

■■ After the conviction a motion for a new trial was made on the ground that four of the jurors during the progress of the trial visited and viewed the premises where the crime was alleged to have been committed. The rule is well settled that an unauthorized view or inspection by members of the jury, while improper, is not ground for a new trial unless it appears that the verdict was affected thereby. 20 R. C. L. and cases cited. And it is equally well settled in the federal courts that whether a new trial will be granted for this reason is a matter resting in the sound discretion of the trial judge. Ng Sing

**v. U. S. (C. C. A. 9th) 8 F.(2d) 919.** The exercise of such discretion will not be reviewed by an appellate court in the absence of abuse. Mattox v. U. S., 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917; Massenburg v. U. S. (C. C. A. 4th) 19 F.(2d) 62, 64; Rossi v. U. S. (C. C. A. 9th) 278 F. 349, 355. There is nothing in the record before us which shows that the defendant was in any wise prejudiced by the conduct of the jurors in viewing the premises or that the trial judge abused his discretion in denying the motion for new trial made on that ground.

Other questions are argued in the brief, but they are not raised by proper assignments of error and we will not consider them. The assignments relied upon are as follows:

"7. The Court erred in charging the jury in the manner and for the reasons stated in bills of exception Nos. 4 and 6 wherein that part of the charge excepted to is quoted and asked to be read as a part of this assignment.

"8. The Court erred in the various and sundry matters noted in connection with the admission and rejection of evidence and in overruling the motion of the defendants to exclude certain evidence unlawfully acquired by unlawful search and seizure, as set out and quoted in totidem verbis in bill of exception No. 7."

It will be noted that the seventh assignment of error does not set out the portions of the charge excepted to totidem verbis as required by our rule 11, but refers to bills of exceptions 4 and 6. Bill of exceptions No. 4 merely sets forth the charge in full. Bill of exceptions No. 6 covers portions of the charge dealing with four distinct matters to which exceptions were taken. The eighth assignment of error does not quote the full substance of any testimony admitted or rejected as required by the rule, but refers to bill of exceptions No. 7, which covers 42 pages of the record and embraces rulings on twenty-one distinct matters. Most of these rulings were manifestly correct. Rule 11 provides: "The appellant or petitioner shall file with the clerk of the court below, with his petition for appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. No appeal shall be allowed unless such an assignment of errors shall accompany the petition. When the error alleged, is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused. Such assignment of errors shall form part of the transcript of the record and be printed with it. When this rule is not complied with, counsel will not be heard, except at the request of the court; and errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned."

The office of the assignments of error is to call the attention of the lower court and of opposing counsel to the errors on account of which an appeal is prayed and to present to this court a concise statement of the grounds on which reversal is asked. In the course of a trial many exceptions are taken which upon more mature consideration counsel abandon when taking an appeal. The exceptions not presented in the assignments of error are abandoned. Those upon which reliance is placed should be set out in accordance with the rule. This is required for three reasons. In the first place, it affords the trial court an opportunity, if it deems the assigned errors fatal, to grant a new trial and save the delay and expense of an appeal and the time of the appellate court. In the second place, it saves the appellate court the difficulty of wading through a lengthy record to find the errors relied on for reversal. And in the third place, it narrows the questions on appeal and enables opposing counsel to address their arguments to the points which appellant proposes to raise. Our rule 11 was one of the original rules adopted by the Circuit Courts of Appeals of the United States. 150 F. xxvii. And it has been enforced consistently in this circuit as well as in the other circuits of the country. Cyclopedia of Federal Procedure, vol. 6, pp. 507–513; Newman v. Virginia, T. & C. Steel & Iron Co. (C. C. A. 4th) 80 F. 228, 230; Burchett v. U. S. (C. C. A. 4th) 194 F. 821; R. D. Cole Mfg. Co. v. Mendenhall (C. C. A. 4th) 240 F. 641; City of Grafton v. Gentry Bros. Shows (C. C. A. 4th) 240 F. 646.

We have power under the rule to notice plain error not assigned; but we exercise this power only in exceptional cases where necessary to prevent a miscarriage of justice. No such necessity exists here, as a careful examination of the record convinces us that there has been no miscarriage of justice. The case was fairly and carefully tried and the guilt of the defendant fully established by competent testimony. Complaint is made of the use of a letter obtained by what is alleged to have been an unlawful search;

but it appears that the judge instructed the jury that this letter was not to be considered as evidence of the conspiracy charged but only as bearing upon the credibility of the defendant's testimony. This is the only matter embraced in bill of exceptions No. 7 which has given us any concern; but in the light of the limitation placed upon the testimony by the charge of the court, we cannot say that it resulted in prejudice to the defendant. Certainly it has not resulted in a miscarriage of justice so as to justify us in considering it, when it has not been properly assigned as error under the rule.

Because of the misconception which seems to exist on the part of a number of counsel in the circuit, we take this opportunity of calling attention to the practice in preparing bills of exceptions. Where all of the matters occurring at the trial are included in one bill of exceptions which shows the exceptions taken, it is not necessary to cover each exception in addition by a separate bill of exceptions. This unnecessarily prolongs the record and increases the expense of appealing. It is sufficient to have one bill of exceptions, showing the exceptions taken in the order of their occurrence. The assignments of error, properly made under rule 11, will show which of these are relied upon on appeal.

The judgment below will be affirmed.

Affirmed.