MISSISSIPPI VALLEY TRUST COMPANY, APPELLANT, v. WEST ST. LOUIS TRUST COMPANY, IN CHARGE OF O. H. MOBERLY, COMMISSIONER OF FINANCE, FOR LIQUIDATION, RESPONDENT.—103 S. W. (2d) 529.

St. Louis Court of Appeals.  Opinion filed April 6, 1937.

*Robert L. Aronson* for appellant.

*Robt. J. Keefe* for respondent.

*Igoe, Carroll Higgs & Keefe* of counsel.

. SUTTON, C.—By this action the Mississippi Valley Trust Company seeks to have its claim for $2,845 allowed as a preferred claim against the assets of the West St. Louis Trust Company, which is in charge of the finance commissioner for liquidation. The claim was duly presented to the finance commissioner, was by him duly allowed as a common claim, and was certified and presented to the circuit court for determination as to its priority of payment.

The claimant, Mississippi Valley Trust Company, in its claim filed with the finance commissioner, alleges that there is due the claimant, the said Mississippi Valley Trust Company from the West St. Louis Trust Company $2,845, being the amount due on January 13, 1933.

on a cashier's check No. 79777, dated January 12, 1933, payable to the Mississippi Valley Trust Company; that said claimant is entitled to a priority of payment in preference to general creditors, said claim for preference being founded upon the following facts: The cashier's check No. 79777 of said West St. Louis Trust Company in the amount of $2,845, upon which said claim is hereby made, was issued to said claimant in payment of a check signed by Sol Serkes and Herbert F. Lewis for $2,845 drawn on said West St. Louis Trust Company, said check of Sol Serkes and Herbert F. Lewis having been presented for collection by said Mississippi Valley Trust Company by messenger on January 12, 1933; that the said check of Sol Serkes and Herbert F. Lewis for $2,845 was collected by said West St. Louis Trust Company, and that said cashier's check, in the amount of $2,845, represents the proceeds of such collection made by said West St. Louis Trust Company, and that said cashier's check was not paid upon presentation thereof for the reason that the said West St. Louis Trust Company was reported closed; that by reason of the facts above set out the assets of the said West St. Louis Trust Company are impressed with a trust in favor of the Mississippi Valley Trust Company, the owner of the proceeds of the item herein described, and that said claimant, Mississippi Valley Trust Company, is entitled to a preferred claim pursuant to paragraphs 2 and 3, of section 5575 of the Revised Statutes, State of Missouri, 1929; that said Mississippi Valley Trust Company is not indebted to said West St. Louis Trust Company in any sum and that said West St. Louis Trust Company is not entitled to any credits or offsets against this claim, and that the foregoing statements are true to the best of his knowledge and belief.

In the circuit court the claimant offered to file an amended claim, which was rejected by the court on objection of the finance commissioner on the ground that it was a departure from the original claim. It is clear, however, that the evidence adduced was admissible under the original claim filed with the finance commissioner, and supported its allegations.

Upon the trial of the cause the court gave judgment denying the claim as a preference and classifying it as a general or common claim. Claimant appeals.

Appellant contends that on the facts it is entitled to a preference under the second subdivision of section 5575, Revised Statutes 1929, Mo. St. Ann., sec. 5575, p. 7715.

The evidence shows that on January 12, 1933, appellant received from Sol Serkes and Herbert F. Lewis their check for $2,845, drawn on the West St. Louis Trust Company, and made payable to the order of appellant. The check was given in payment of the balance due on a note which appellant held for collection for a customer. The appellant endorsed the check and sent it by messenger to the West St. Louis Trust Company for payment. The messenger received from

the West St. Louis Trust Company its treasurer's check for $2,845, made payable to the order of the appellant. The West St. Louis Trust Company was closed for business a little before regular closing time on the afternoon of January 12, 1933. The appellant tried to collect the treasurer's check through the Federal Reserve Bank the following day by presenting the check there for credit, but appellant did not receive credit, and the treasurer's check was never paid. At the time the Serkes and Lewis check for $2,845 was presented to the West St. Louis Trust Company for payment said trust company had on deposit to the credit of said Serkes and Lewis an amount more than equal to the amount of said check. When said trust company made and delivered its treasurer's check for $2,845 to the messenger it charged said check to the account of said Serkes and Lewis, and made an entry on its treasurer's check register showing the issuance of its treasurer's check in the amount of $2,845, payable to the order of appellant in exchange for a check of Serkes and Lewis.

The evidence shows that when the Serkes and Lewis check was forwarded to the West St. Louis Trust Company it was either endorsed, "Pay in Federal Reserve Funds," or was endorsed, "Pay in Cashier's Check."

Paul Speakman, an employee in the collection department of the appellant, testified that he used a stamp in making the endorsement, and after stamping the endorsement on the check struck out the words, "cashier's check" and wrote in "Federal Reserve Funds."

George H. Scherrer, who issued the treasurer's check, testified to the effect that when he received the Serkes and Lewis check, it was endorsed, "Pay in Cashier's check."

It appears to be agreed that the endorsement, "Pay in Federal Reserve Funds," means a draft on the Federal Reserve Bank.

Paul Speakman also testified that the Serkes and Lewis check was presented by Serkes in person, that he checked the balance due on the note for which the check was tendered in payment, and told Serkes that he would not deliver the note until he had the funds immediately available.

The Bank Collection Code was enacted in 1929, and appears at page 205 of the Session Laws of that year. It is entitled as follows: "An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money." It is now embodied in article 8 of chapter 34 of the Revised Statutes of 1929.

Section 5575 is as follows:

"1—When the drawee or payor, or any other agent collecting bank shall fail or be closed for business by the commissioner of finance or by action of the board of directors or by other proper legal action, after an item shall be mailed or otherwise entrusted to it for collection

or payment but before the actual collection or payment thereof, it shall be the duty of the receiver or other official in charge of its assets to return such item, if same is in his possession, to the forwarding or presenting bank with reasonable diligence. 2—When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawee thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank. 3—Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items, entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.''

It will be observed that this section covers two classes of transactions, one where items are presented to the drawee or payor bank for payment, and the other where items are entrusted to an agent collecting bank for collection. The transaction involved here belongs to the first class, and the solution of the question as to whether or not appellant is entitled to a preference involves a construction of the second subdivision of the section.

The allowance of a preference is defeated, under this subdivision, where an item is presented to a drawee or payor bank for payment, if it appears that the item has been paid or settled for by the drawee

or payor bank, either in money, or by an unconditional credit given on its books or on the books of another bank, which has been requested or accepted so as to constitute such drawee or payor bank or other bank debtor therefor. It is this provision that respondent here particularly relies on to defeat the allowance of a preference. Respondent insists that the treasurer's check issued by the West St. Louis Trust Company, which treasurer's check was requested and accepted by appellant, constitutes an unconditional credit given appellant by the West St. Louis Trust Company. In this insistence respondent overlooks that it is an unconditional credit, given on the books of the drawee or payor bank or other bank, requested or accepted, and not a check or draft, requested or accepted, given in exchange for the item presented to the drawee or payor bank for payment, that defeats a preference. To hold that a check or draft requested or accepted, in exchange for an item presented to the drawee or payor bank for payment, constitutes an unconditional credit on the books of the drawee or payor bank or other bank, would defeat the manifest purpose of the statute. It is through just such means of payment that the statute intends that payment of items presented to a drawee or payor bank is to be expedited. If such means adopted to accomplish payment fails on account of the closing of the drawee or payor bank, the statute accomplishes the payment intended by the allowance of a preference against the assets of the closed drawee or payor bank.

If, when the West St. Louis Trust Company received the Serkes and Lewis check, it had charged the check on its books to the account of Serkes and Lewis, and had, instead of issuing its treasurer's check, given appellant credit on its books for the Serkes and Lewis check, such credit having been requested or accepted by appellant, this would have constituted payment of the check by an unconditional credit on the books of the West St. Louis Trust Company. If appellant after receiving the treasurer's check from the West St. Louis Trust Company had presented it to the Federal Reserve Bank, which at the time had on deposit to the credit of the West St. Louis Trust Company $40,000, and the Federal Reserve Bank had charged the treasurer's check to the West St. Louis Trust Company's account and had given appellant credit on its books for the check, said credit having been requested or accepted by appellant, this would have constituted payment of the Serkes and Lewis check by an unconditional credit given on the books of the Federal Reserve Bank, that is, it would have constituted payment of the Serkes and Lewis check. presented to the West St. Louis Trust Company, by an unconditional credit given on the books of another bank.

In Shell Petroleum Corporation v. Sturdivant Bank (Mo. App.), 87 S. W. (2d) 1064, the Shell Petroleum Corporation presented to the Sturdivant Bank in Cape Girardeau checks drawn on the Sturdi-

vant Bank, made payable to the Shell Petroleum Corporation, and received in exchange therefor drafts drawn on the First National Bank in St. Louis. The Shell Petroleum Corporation was not a depositor of the Sturdivant Bank. The Sturdivant Bank was closed and the drafts were on that account never paid. It was held that the Shell Petroleum Corporation was entitled to a preference.

And the same view of the statute appears to have been taken by our Supreme Court in Bank of Republic v. Republic State Bank, 42 S. W. (2d) 27, l. c. 31.

To the same effect are the following cases ruled on statutes similar to ours: The People ex rel. Nelson v. Dennhardt, 354 Ill. 450; State ex rel. Sorensen v. Farmers State Bank, 125 Neb. 427; Madden v. Wilde (Wyo.), 38 Pac. (2d) 603; Fulton v. Baker-Toledo Co., 125 Ohio State 518.

In Ex Parte Sanders, 168 S. C. 323, the court construing a statute like ours held that a checkholder accepting from the drawee bank a draft in exchange for the check thereby received such unconditional credit as defeated the allowance of a preference. The court said that the checkholder having accepted from the drawee bank a draft on another bank, this was an unconditional credit on the books of such other bank given by the drawee bank and accepted by the checkholder. We do not understand how the issuance of a draft by the drawee bank on another bank may rightly be regarded as the giving of an unconditional credit on the books of such other bank. There were two dissenting opinions in that case, one by Chief Justice BLEASE and the other by Associate Justice COTHRAN. The Associate Justice, in his dissenting opinion, vigorously asserted that the draft was not a credit on the books of any bank.

In the present case respondent appears to draw a distinction. between a case where the holder of an item presenting the item to the drawee or payor bank expressly demands payment thereof and afterwards accepts a check or draft in payment, and a case where the holder presenting the item does not expressly request payment, but on the contrary expressly requests and accepts a check or draft, contending that in the one case the holder is entitled to a preference and in the other he is not. We do not think the statute should be so narrowly and technically construed. It is true the statute requires that the item be presented for payment, but this does not mean that payment must be expressly requested, or that a request for a check or draft is to be regarded as showing that the item is not presented for payment. Where the holder of an item, who is not a depositor of the drawee or payor bank, presents the item to the drawee or payor bank and requests and accepts a check or draft therefor, the item, we think, is presented for payment within the meaning of the statute, and the check or draft is issued and taken as a means to be used to accomplish payment of the item.

In this case the Serkes and Lewis check was manifestly presented to the West St. Louis Trust Company for payment, whether a cashier's check, or a draft on the Federal Reserve Bank, was requested. In either event the treasurer's check was issued and accepted as a means to be used to accomplish payment of the Serkes and Lewis check. The means thus adopted having failed to accomplish that end because of the closing of the trust company, the payment intended will be accomplished by the allowance of a preference.

Respondent contends, however, that the entry made by the West St. Louis Trust Company upon its treasurer's check register was an unconditional credit on its books within the meaning of the statute. To this we cannot agree. Surely the decision of the question here involved is not to turn on the mere circumstance as to whether the trust company upon the issuance of the treasurer's check did or did not enter upon its books a record of the transaction. The rights and relations of the parties are determined by the treasurer's check issued by the trust company and not by the entry made on the books of the company. The effect of the issuance of the treasurer's check would be precisely the same whether the entry was made or was not made. If no treasurer's check or other like instrument had been issued and the transaction had been represented by a credit entered on the books requested or accepted by appellant, then, as already said, the credit on the books would be determinative.

Respondent further says that unless the voluntary acceptance of a check or draft is to be regarded as an acceptance of an unconditional credit within the meaning of the statute, the statute will work an unjust discrimination between creditors of the closed bank so as to render the statute unconstitutional—a result which must be avoided if by fair interpretation it can be. In this connection it should be observed that the statute is not designed, in its primary purpose, to give preference to one class over another, but its real purpose is to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money. We do not think that construing the statute so as to carry out this purpose renders it unconstitutional. But, be this as it may, we are not permitted to rewrite the statute in order to save it from the condemnation of the constitution.

The Commissioner recommends that the judgment of the circuit court be reversed and that the cause be remanded to that court with directions to enter judgment in accordance with the views herein expressed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded to that court with directions as recommended by the Commissioner. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.