**ORENBERG et al. v. THECKER et al.**

No. 8594.

United States Court of Appeals
District of Columbia.

Decided June 26, 1944.

Mr. Henry I. Quinn, of Washington, D. C., with whom Mr. Joseph Sitnick, of Washington, D. C., was on the brief, for appellants.

Mr. Dorsey K. Offutt, of Washington, D. C., with whom Mr. Thomas A. Farrell, of Washington, D. C., was on the brief, for appellees.

---

[3] 31 App.D.C. 447, writ of error dismissed, 214 U.S. 529, 29 S.Ct. 694, 53 L.Ed. 1069.

Before MILLER, EDGERTON and ARNOLD, Associate Justices.

MILLER, Associate Justice.

It is contended on behalf of appellants in this case that the trial judge abused his discretion in denying a motion for new trial. Two allegations, specifying misconduct upon the part of jurors, constitute the basis for this contention. The first is that two jurors, during the trial, without authorization, visited the scene of the accident involved in the case; that one of them made observations, inspections and experiments; and that both reported their observations to the other jurors. This specification was supported by the affidavits of three other jurors.

In Economon v. Barry-Pate Motor Co., Inc.,[1] we said: "In unmistakable language both this court and the Supreme Court of the United States have held the general rule to be that the testimony of jurors will not be received to impeach their verdict, unless such testimony relates to extraneous influences brought to bear upon them." In the present case no extraneous influences, of the kind contemplated by the decisions of this court and of the Supreme Court, were brought to bear upon the jurors; hence the general rule is applicable and the first specification must fail. To avoid what might seem, at first glance, a summary application of an arbitrary rule it is well to consider the following language which the Supreme Court used in McDonald v. Pless:[2] "For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and in-

flicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room. * * * But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." That the Supreme Court, in the McDonald case, did not overlook the arguments advanced by appellants in support of their motion is shown by the following additional language:[3] "And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.'" It is not necessary to say more or to consider whether it would be reasonable to require jurors, during the course of a trial, to go by roundabout routes, avoiding main traveled streets, or to close their eyes to traffic controls on such streets.[4]

The second specification is that some jurors gave false answers or concealed material information by silence when

[1] 55 App.D.C. 143, 145, 3 F.2d 84, 86, citing: Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Hendrix v. United States, 219 U.S. 79, 31 S.Ct. 193, 55 L.Ed. 102; Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L. Ed. 1114, Ann.Cas.1914A, 614; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783,

59 L.Ed. 1300; American Security & Trust Co. v. Kaveney, 39 App.D.C. 223.
[2] 238 U.S. 264, 267, 268, 35 S.Ct. 783, 784, 59 L.Ed. 1300.
[3] McDonald v. Pless, 238 U.S. 264, 268, 35 S.Ct. 783, 784, 59 L.Ed. 1300.
[4] See Roberts v. United States, 4 Cir., 60 F.2d 871, 873.

questioned on the voir dire, concerning claims for personal injuries previously suffered by them. The questions propounded to the panel—and in response to which two jurors remained silent—were: (1) "Have any of you ever been plaintiffs in a case involving personal injuries in an automobile accident, or any other kind of an accident? Have you ever presented a claim against anyone for personal injuries, whether arising out of an automobile accident, or an accident in a store, apartment house or hotel?" and (2) "Is there anyone else who has had a claim of any kind involving personal injuries?" It can be too easily assumed that laymen, called from ways of life far removed from the courtroom, will understand words and terms of art customarily used by lawyers and judges. As a matter of fact, many such words are not well understood by lawyers and judges themselves.[5] It would be a violent assumption that such laymen will be alert to give considered answers to questions containing several such words or terms, or that failure to respond constitutes concealment or a false answer. For example, even to lawyers and judges, such words as *claim*[6] and *presented*[7] have varied meanings. Some laymen, who have had no courtroom experience, do not know the meaning of *plaintiffs, personal injuries* and other words which were used in the questions propounded by counsel for appellants. Within the last year this court had occasion to decide a dispute between able counsel as to the meaning of the words plaintiff and defendant,[8] as used by Congress in recent legislation. It would be asking a great deal of laymen that they be certain and confident in the use of lawyers' words when lawyers themselves disagree as to their meaning. It would be grim irony to insist that our juries must constitute a representative cross section of all the people[9] if at the same time im-

---

[5] See Mr. Justice Frankfurter, dissenting in United States v. Monia, 317 U.S. 424, 431–432, 63 S.Ct. 409, 415, 87 L. Ed. 376: "The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification. It is a wooden English doctrine of rather recent vintage (see Plucknett, A Concise History of the Common Law, 2d Ed., 294–300; Amos, The Interpretation of Statutes, 5 Camb. L.J. 163; Davies, The Interpretation of Statutes, 35 Col.L.Rev. 519), to which lip service has on occasion been given here. but which since the days of Marshall this Court has rejected, especially in practice."

[6] See Mellus v. Potter, 91 Cal.App. 700, 704, 267 P. 563, 564: "There is no proof, at the time said receipt was signed, that any *claim* existed in favor of respondent in respect to the syndicate commissions. 'Claim,' in its primary meaning. is used to indicate the assertion of an *existing right*. In its secondary meaning, it may be used to indicate the right itself. Appeal of Beach, 76 Conn. 118, 55 A. 596, 599. At the time of the execution of the said receipt no contract for the commissions in question had been executed by appellant and the syndicate, nor had appellant then received said commissions. The *claim* mentioned in the Code refers to an *existing* right in favor of the creditor, and not to rights which have not yet accrued."; Federal Rules Civil Procedure, Rules 8, 10(b), 18, 42, 28 U.S.C.A. following section 723c;

Whittall v. Murray Furniture Co., D.C., M.D.Pa., 41 F.2d 277, 278; O'Leary v. Harris, 89 N.J.L. 671, 674, 99 A. 774, 775; Jones v. Commissioners of Lucas County, 57 Ohio St. 189, 214, 48 N.E. 882, 886, 63 Am.St.Rep. 710.

[7] State ex rel. Scherber v. Probate Court, 145 Minn. 344, 177 N.W. 354, 11 A.L.R. 242; Mississippi Valley Trust Co. v. West St. Louis Trust Co., 232 Mo.App. 281, 289, 103 S.W.2d 529, 532; Fitzgerald's Estate v. Union Sav. Bank, 65 Neb. 97, 100, 90 N.W. 994, 995; Escher v. Carroll County, 146 Iowa 738, 742, 125 N.W. 810, 812; Anderson v. Birmingham, 177 Ala. 302, 58 So. 256; Keys v. Keys' Estate, 217 Mo. 48, 65, 116 S.W. 537, 541.

[8] In re Adoption of a Minor, 78 U.S. App.D.C. 48, 136 F.2d 790.

[9] Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; D.C.Code (1940) § 11—1417; Pierre v. Louisiana, 306 U.S. 354, 360, 59 S.Ct. 536, 83 L.Ed. 757; Report to the Judicial Conference of the Committee on Selection of Jurors (September, 1942) 5: "In order that grand and petit jurors to serve in United States district courts may be so drawn as to be truly representative of the community, the sources from which they are selected should include all economic and social groups of the community."; id. at 13: "It is the sense of the Committee that jurors to serve in the district courts of the United States should be drawn from every economic and social group of the community without regard to race,

378

possible standards of performance were imposed. Moreover, in the present case, the questions propounded were not directed to each venireman separately. Instead, they called for voluntary responses upon the initiative of each. Many lawyers, remembering their own first appearances in court, will understand the trepidation of a layman who, for perhaps the first time in his life, occupies the spotlighted position of the jury box; and his reluctance to discuss with able counsel, abstract legal issues such as those implicit in the questions propounded in the present case. These are the considerations which must be kept in mind in determining whether there was such *giving of false answers* or *concealment of material information* as to constitute misconduct and require, so compellingly, the granting of a new trial as to establish abuse of discretion upon the part of the trial judge.[10] We conclude that (1) there was no sufficient inquiry by counsel, on the voir dire, to support the motion for new trial or the present contention on this appeal; (2) there was no giving of false answers by either juror; (3) there was no concealment or intention to conceal within the meaning of the law; (4) there was no abuse of discretion by the trial judge.

Affirmed.

color, or politics, and that those chosen to serve as jurors should possess as high a degree of intelligence, morality, integrity, and common sense, as can be found by the persons charged with the duty of making the selection. Only by the uniform application of this standard can the jury system achieve its purposes and satisfy the demands which constitutional and statutory requirements place upon it." See Ransom, Why Business Men Should Serve on Juries, 14 Tenn.L.Rev. 181; Miller, The Woman Juror, 2 Ore.L. Rev. 30; Note: Group Interests on Juries, 16 Ore.L.Rev. 293.

[10] Economon v. Barry-Pate Motor Co., Inc., 55 App.D.C. 143, 3 F.2d 84; Washington Times Co. v. Bonner, 66 App.D.C. 280, 292, 86 F.2d 836, 848, 110 A.L.R. 393; Brown v. New York Indemnity Co., 8 Cir., 39 F.2d 443, 445; Roberts v. United States, 4 Cir., 60 F.2d 871, 872; Buckeye Powder Co. v. E. I. Du Pont de Nemours Powder Co., 3 Cir., 223 F. 881, 889.