# THE STATE v. ISAAC COLEMAN, Appellant.

### Division Two, March 30, 1915.

1. **REFUSED INSTRUCTIONS: Objected to by Defendant: Attorneys: Criminal Law.** A defendant in a criminal trial cannot take advantage of the court's failure to give instructions to which his counsel objected, and this is true despite the facts that counsel after he objected said, "If you don't instruct on all the law, I will take advantage of it," and that another of his counsel, who was not present at the time, afterward tried to disclaim his colleague's action.

2. **NEW TRIAL: Discretion of Court: Misconduct of Jurors: Presumptions.** The law presumes that jurors have obeyed their oaths; and accordingly the trial court did not abuse its discretion by refusing a new trial, although an affidavit was filed stating that the jurors in their deliberations had been guilty of misconduct, especially when the affiant stated when questioned by the State that he obtained his information by listening at the door to the jury room.

Appeal from Washington Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*Irwin & Nipper* for appellant.

The court erred in failing to instruct on manslaughter, for it was the duty of the court to instruct on all the law in the case whether requested to do so or not, and the fact that one of the counsel for the defense said that it should not be given could not be invoked when the counsel who conducted the trial was not present and knew nothing about the transaction or conversation between the court and the counsel referred to. The facts in the Philpot case, reported in 242 Mo. 504, are not like those in the present case, and we think the defendant was entitled to have instructions on all the law submitted to the jury in the

trial of this case, which we think was improperly denied. It was clearly error for the court to refuse defendant a new trial after the affidavit of Steve Cole was filed in this case. We know of no case where such misconduct was shown and the court allowed the verdict to stand. State v. Branstretter, 65 Mo. 149; State v. Robinson, 117 Mo. 649.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The State did not err in failing to instruct on manslaughter in the fourth degree. State v. Philpot, 242 Mo. 511. (2) The court did not err in overruling plaintiff's motion for a new trial on the ground of misconduct of the jury. 12 Cyc. 675, 727; State v. Sprague, 149 Mo. 409; State v. Noland, 111 Mo. 473.

ROY, C.—Defendant was convicted of murder in the second degree, and his punishment assessed by the jury at ten years in the penitentiary.

On the night of November 12, 1913, there was a dance given by one Pashia near the village of Old Mines, at which there was considerable drinking of liquor and several fights. The evidence shows very clearly that Kennett Ross was struck in the left temple by a rock, and his skull thereby broken, resulting in his death two days afterward. The evidence was uncertain as to whether the stone was thrown by some one or held in the hands while the blow was struck. There was a conflict in the evidence as to the person who wielded the stone by which Ross was killed. Some of the witnesses testified that the defendant was the person who wielded the stone which did the injury, and several testified to statements made by defendant admitting that he struck Ross. Those statements were denied by defendant on the stand.

The defendant's version of the affair, given on the stand, is as follows: "I got down there near Mr. Ross,

and he had my father by the throat, and had his knife like this (indicating), and my brother run up and caught his arm that had the knife in it, and asked him to put his knife away, and he wouldn't do it, and I came up there within about seven or eight feet, I guess, and then my father shoved him away and my brother turned him loose, and he started toward him with his knife like this (indicating), and I walked in and caught him like this, and I asked him again to put up his knife, and he backed me up against a fence, and he was still coming at me, and I stooped down to pick up something and just when I stooped down, some one hit him and he fell."

Zedor Coleman, defendant's father, testified that Albert Coleman and George Partel were in a fight some distance from the house. Witness continued: "I turned around, and just as I turned around, this man Ross and Coleman met right there with a knife in his hand, and that kind of scared me, you know, and this fellow, Joe Portell, was standing right by the side, and I shoved him back like, and when I shoved him back like that, Isaac was standing there by the side of me, and I went over to Isaac, and I says, 'Look at that fellow with a knife,' and Ross, he cut at me, and Isaac kind of reached down like that (indicating) and hit at Ross, and just as he did, Ross fell and I didn't see Isaac throw at all. He just looked down like that (indicating)."

After the evidence was all in, and while the instructions were being discussed between the court and Mr. Irwin, one of defendant's attorneys, the court asked Mr. Irwin what he thought of giving an instruction on manslaughter in the fourth degree. Mr. Irwin objected to such an instruction, saying that it was purely a case of self-defense or nothing, saying at the same time, "If you don't instruct on all the law, I will take advantage of it." The instruction was not given.

On the hearing of the motion for a new trial, Mr. Nipper, the other attorney for the defendant, in regard to what occurred between court and counsel at the trial on the subject of giving that instruction, said: "Well, while I seem to be leading attorney in the trial of this case, because I conducted the examination of the witnesses, I think it is nothing more than due that I should make a statement. I didn't know what took place in this consultation room because I wasn't there, and I don't think this client of ours ought to suffer on account of remarks made, or of any conduct on the part of my associates in the case, of which I have no knowledge; as to whether he was right or wrong, I do not state, but I do hate to feel that my client and myself should be held responsible on account of the acts of my associates in this matter."

Two of the grounds set out in the motion for a new trial were as follows:

"16th. Because the jury in their deliberations after retiring to consider of their verdict took into consideration and discussed the habits of defendant as to drinking, when there was no evidence in record as to same, as shown by affidavit herewith filed and made a part of this motion.

"17th. Because the jury discussed and took into consideration the verdict in another murder case, rendered during this term of court, to-wit: State v. Rhyneer (as shown by affidavit herewith filed and made part of this motion), when there was nothing in this record in regard to the Rhyneer case."

In support of those points in that motion defendant introduced the affidavit of Steve Cole in which he stated that while the jury were deliberating, he, the affiant, "heard the foreman of the Coleman jury using as an argument why the defendant, Isaac Coleman, should be convicted, the fact that the other jury in the Rhyneer case had practically turned Rhyneer loose and it would not look well for this jury to do likewise;

that in substance the foreman of the jury said: 'Gentlemen of the jury, the other jury turned this other fellow Rhyneer loose, and if we turn this man loose the people will criticize us and it won't look well.' Affiant further states that he heard the juror William Kelsey at about the same time discussing with the other members of the jury as to the defendant's drinking and that he had promised to quit some time ago.''

The State did not introduce any affidavit of the jurors to deny such statement, but called Steve Cole as a witness, who testified that when he heard what occurred in the jury room he was standing by the door listening.

The instructions are regular and no objection has been made to any of them.

I.   The failure to give an instruction on manslaughter in the fourth degree was not error. The defendant objected to such an instruction. The error, if error it was, was committed at the instance of the defendant, and he cannot be heard to complain. See our Statute of Jeofails, section 5115, Revised Statutes 1909.

**Refused Instructions: Objected to by Defendant's Counsel.**

It makes no difference that defendant's counsel told the court at the time the instructions were being discussed, "If you don't instruct on all the law, I will take advantage of it." No advantage can be taken of the action of the court which was in accordance with the expressed desire of the defendant, neither will it avail the defendant that one of his own attorneys was not present and did not know of the action taken by his associate counsel. We know of no law which enables a party to a cause to try his case on as many different theories as he has lawyers representing him. There is no need to cite authorites on this point. It is too evident for discussion.

II. The trial court passed upon the question of the misconduct of the jury, and ruled adversely to the defendant. There is nothing in the facts in this case to justify our interference with the trial court's ruling. The State did not introduce the affidavit of the jurors to contradict the affidavit of Steve Cole, but the latter, being placed on the stand, stated that he was listening at the door of the jury room where he heard what passed therein. The trial court doubtless considered that Cole, inasmuch as he was an eavesdropper, was not a disinterested witness, and therefore did not consider his affidavit sufficient to overthrow the presumption in favor of the right action of the jury

*Misconduct of Jurors: Presumptions: New Trial Refused.*

The Cyclopedia of Law and Procedure, vol. 12, p. 749, says: "The fact that defendant's affidavit showing misconduct on the part of the juror is uncontradicted does not compel the court to accept it as true, for against it the law raises the presumption that the jurors had obeyed their oaths. The issue is one of fact upon all the circumstances for the trial court, and if, after weighing this presumption against the affidavit of the prisoner, it sustains the verdict, no abuse of discretion will be presumed."

In Tracey v. State, 46 Neb. 361, the defendant made an affidavit as to the misconduct of the jury. The State furnished no affidavit in support of the jury. It was contended that in the absence of such showing, the motion for a new trial should have been sustained. It was held that the law presumed the right conduct of the jury, and that the court properly considered that presumption on one side as against the evidence on the other, and was justified in reaching the conclusion that the charge was not sustained.

In this case the affidavit was not made by the defendant, but by another person who was not disinterested.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur except *Walker, J.,* who dissents.