BANK OF MALDEN, APPELLANT, v. ROY M. STOKES AND B. F. MARKLE, RESPONDENTS.*

In the Springfield Court of Appeals. Opinion filed March 2, 1926.

1.—Appeal and Error—Appellate Practice—Weight of Evidence and Credibility of Witnesses are for Jury, in Action on Note. Where, in an action on a note, defendant filed an answer of non est factum, the weight of the evidence tending to show whether he is liable on the instrument and the credibility of the witnesses were for jury, and their finding is conclusive on appeal.

2.—Same—Same—Review—Record. Where record contains no exception to alleged improper argument of counsel, there is nothing for review.

3.—New Trial—Impeaching Verdict by Evidence of Jurors. Where plaintiff, after jury had found for defendant, contended verdict was invalid, he could not impeach it by evidence of the jurors who returned it.

4.—Same—Impeaching Verdict—Evidence of Others as to Statement of Juror After Discharge. Evidence that, after the jury had rendered a verdict and had been discharged, one of the jurors had stated that the jury, in considering the case, had been governed by facts not introduced on the trial, is inadmissible to impeach the verdict.

5.—Same—Same—By Juror Not Concurring in Verdict. Where plaintiff, in an action on a promissory note, the jury having found for defendant on plea of non est factum, contended judgment was invalid because some of the jurors claimed to know of their own knowledge about genuineness of the signature, testimony of jurors who did not concur in verdict could not be considered to impeach it.

6.—Same—Same—Public Policy. The prohibition against impeaching a verdict by the affidavits, statements, or evidence of the juror is founded on public policy.

7.—Same—Grounds—Discretion of Trial Court. Because of his peculiar situation the trial judge is given a wide discretion in the matter of granting a new trial, and has the inherent power to grant a new trial for cause independent of the grounds set up in the motion therefor.

8.—Same—Misconduct of Jury or Jurors—Discretion of Trial Court. Where, because of grave misconduct on part of jury or jurors, the losing party has been deprived of a fair and impartial trial, and because of barriers set by law for protection of jury in manner of reaching verdicts, is unable to establish the fact for appellate review, the trial court should exercise its discretion and grant new trial.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 80; n. 60; p. 88, n. 9; p. 848, n. 35; p. 850, n. 51; p. 860, n. 14. New Trial, 29Cyc, p. 759, n. 86; p. 810, n. 76; p. 921, n. 11, 12; p. 981, n. 97; p. 982, n. 3; p. 983, n. 5; p. 986, n. 15; p. 988, n. 23; p. 1008, n. 48; p. 1009, n. 54.

Appeal from the Circuit Court of Dunklin County.—Hon. W. S. C. Walker, Judge.

AFFIRMED.

*C. M. Edwards,* of Malden, for appellant.

*Cox & Morris,* of Malden, for respondent.

BRADLEY, J.—This is an action on a promissory note in the principal sum of $200. Defendant Stokes made no defense. Defendant Markle filed a plea of *non est factum.* The cause was tried to a jury, and verdict and judgment went for defendant Markle and plaintiff appealed. The note sued on is dated November 17, 1917, and is claimed to be a renewal of a note dated January 16, 1917. Sometime prior to the date of the original note defendant Stokes borrowed from Markle the sum of $500, and at or about the date of the original note owed on said loan a balance of $221.50. Stokes at the time the original note was given was assistant cashier of plaintiff bank, and testified that he used the proceeds of the original note to pay the balance he owed Markle on the $500 loan. The bank records show and Markle admits that on January 9, 1917, Stokes deposited in plaintiff bank to his (Markle's) credit the sum of $221.50. Stokes explained that from January 9th to January 16th the matter was carried as an overdraft against his, Stokes' account. Markle was unable to sign his name, and identified his signature by mark. He testified that he did not sign the original or the note sued on. Stokes testified that Markle authorized him to sign his, Markle's name to the note, and that he did so and left it in the bank with the understanding that Markle would in a few days came in and make his mark. E. Zimmerman, who was cashier of plaintiff bank at the time, testified that Markle came into the bank and made his mark to his signature on the note and that he, the witness, held the pen while said mark was being made and that Markle also touched or held the pen during the making of said mark. The note also bears the signature of the witness Zimmerman as a witness to what is alleged to be Markle's signature, and Zimmerman testified that he placed his name on the note as a witness to the signature of Markle at the time Markle came into the bank and made his mark.

Plaintiff challenges the sufficiency of the evidence. The jury is the judge of the weight of the evidence and the credibility of the witnesses. [Griffin v. Railway, 199 Mo. App. 682, 204 S. W. 826.] In law cases the weight even of undisputed parol evidence is for the triers of the facts, and their finding is conclusive on appeal. [St. Louis Union Trust Company v. Hill, 283 Mo. 278, 223 S. W. 434.] There are many cases where verdicts have been set aside on appeal because not supported by substantial evidence, but such is not the case before us. There are cases, however, which when viewed upon the whole record are said to shock the judicial conscience, and in such extreme cases new trials have been ordered in order to subserve sub-

stantial justice. [Norris v. Whyte, 158 Mo. 20, l. c. 36, 57 S. W. 1037; l. c. 1042; Traw v. Heydt, 216 S. W. (Mo. App.) 1009.] Such cases, however, for the most part, concern excessive damages allowed for personal injury.

Plaintiff assigns error also upon alleged improper argument of counsel for defendant. The record does not definitely show the language used in argument of which complaint is made. There is, however, in the record a colloquy between the court and counsel relative to "that argument." At the conclusion of the colloquy counsel said: "I am asking for a ruling. Thereupon the court said: "The attorney must confine himself to the testimony; the jury are the judges of what the testimony is. Of course I know the entire sheet wasn't offered in testimony." No exception appears. In this situation there is nothing for review before us respecting the alleged improper argument. [Brim v. Alexander, 186 S. W. (Mo. App.) 544.]

If plaintiff was seriously prejudiced by anything in the progress of the trial it was the misconduct of certain members of the jury. Plaintiff strenuously sought a new trial on the ground that a grave injustice had been done to it by certain members of the jury who were not qualified to sit if the evidence be true that plaintiff offered in support of its motion. In the motion for a new trial plaintiff alleged that juror J. A. Fry was not a qualified juror although he had duly qualified on the *voir dire* examination. On the hearing of the motion for a new trial plaintiff called T. A. Neely one of the jurors in said cause who did not concur in the verdict, and having reference to juror Fry asked this question: "Did you hear him say after the jury retired at the close of the evidence and instructions were given you by the court, and arguments of counsel, that he knew all about the case?" Objection was made on the ground that a verdict could not be impeached by a juror in the case. The court sustained the objection, but suggested that an offering be made. Offering was made to which the same objection was made, and the court then overruled the objection, remarking at the time that he would hear what the witness had to say "and pass on it finally later on." The question, supra, then was read by the court reporter, and the record shows the following:

"A. It seems like I don't remember it that way; but now there was two men in there that did claim they knew all about it; and I believe ruled the jury; I don't know who told this now, I don't know how it got out. There was a fellow by the name of Taylor that said he knew all about it, and knew that Stokes wrote these names on there, and also put this old man's name on it; I heard him repeat it over there just when we was in there this time.

"Q. Did Mr. Fry say anything? A. I don't think Mr. Fry said anything that I remember, only that he just knew the old man

being a perfect gentleman. Maybe he said he didn't believe he did it, or believed he was telling the truth, that he knew him; that's about the way I can remember it.

"Q. He didn't say he had been hearing about that note for a year or two? A. No sir, I can't recall that; if he said that I don't remember it.

"Q. But there were two jurors who did claim to know all about the case. A. Well, Mr. Taylor said that he knew he didn't sign it, and said Stokes did it; that Stokes was a crook and he put these names on there with the calculation of paying these notes and not letting the old man know it."

A. B. Ridgeway one of the jurors who did not concur in the verdict testified concerning what occurred in the jury room subject to proper objection, as follows:

"Q. Did you hear Mr. Fry say after the conclusion of the evidence and the argument when the jury had retired to the jury room that he knew the parties to this case and knew about the case, and had been hearing about this note for a year or two? A. Well, he mentioned knowing something about the situation, and said—I remember he said he knew Mr. Markle and that he was a straight old man. I remember he said that.

"Q. Did he say anything about having heard of this note for a year or two before hand? A. I don't know as he went out and said anything about the note; the most I remember about, he went on to say Mr. Markle was straight in his dealings, and he believed what he said about it.

"Q. And that he was familiar with the situation; did he say that? A. He never called nothing about the note; I believe he said he knew about the situation, but about the note, I don't know.."

G. A. Luther one of the jurors who did not concur in the verdict subject to proper objection testified concerning what occurred in the jury room as follows:

"Q. Did you hear him (Fry) say he was familiar with the situation? A. I believe he said the old man (Markle) was a nice old man and had a good reputation; that's about all I can remember."

John Oglesby who was not one of the jurors was called as a witness on the motion and was asked concerning a conversation he heard between Markle and juror Fry on the next day after the trial, and subject to proper objection, testified:

"Q. What, if anything, did Mr. Fry say to Mr. Markle on that occasion? A. They were talking and he said one of the jurors when they went in at the door, says 'I believe that that fellow signed the note' and Al (Fry) said he spoke up and said 'I know he didn't; I've known all about that for two years; I've heard it talked about

for two years, about the note.' Q. That's what he told Mr. Markle he said? A. Yes, sir.''

At the conclusion of the evidence on the motion the court sustained the objections theretofore made, and excluded the evidence which we have set out. The ruling is uniform in this State that a verdict cannot be impeached by the evidence of the jurors who returned it. [McFarland v. Bellows, 49 Mo. 311; Phillips v. Stewart, 69 Mo. 149; Hoffman v. Dunham, 202 S. W. (Mo. App) 429; Evans v. Kluse-meyer, 301 Mo. 352, 256 S. W. 1036.] Nor can a verdict be impeached by the affidavit or evidence of others as to statements of jurors after their discharge. [Proffer v. Miller, 69 Mo. App. 501.] Nor does the fact that a juror did not concur in a verdict make him a competent witness to impeach the verdict. [Evans v. Klusmeyer, supra; Williamson v. Mullins, 180 S. W. (Mo. App.) 395.] The prohibition against impeaching a verdict by the affidavits, statements or evidence of the jurors is said to be founded upon public policy. [State ex rel. Rogers v. Gage Bros. & Co., 52 Mo. App. 464.]

Because of his peculiar situation whereby he is enabled to better appreciate, and to a degree distinguish between the true and the false, the trial judge is given a wide discretion in the matter of granting a new trial. He has the inherent power to grant a new trial for cause independent of the grounds set up in the motion. [Standard Milling Company v. Transit Company, 122 Mo. 258, 26 S. W. 704.] Because of the protection which the law gives to the manner by which a jury reaches a verdict the injured party, when misconduct on the part of the jury occurs, is most frequently without a remedy. In instances where grave misconduct on the part of the jury or jurors has occurred and the losing party had been because thereof deprived of a fair and impartial trial, and is, because of the barriers, unable to establish for appellate review the fact of misconduct, we think, in such cases, the trial court should exercise the great discretion it has and, *ex necessitate rei,* grant a new trial on the weight of the evidence if no better reason can be found. To grant relief as suggested in such case would always be within the power of the trial court, and would be in accord with sound reason and substantial justice.

We find no reversible error. The judgment is, therefore, affirmed. *Cox, P. J.,* and *Bailey, J.,* concur.