ROBERT REICH, an Infant by ANNA REICH, His Mother and Natural Guardian, v. GUY A. THOMPSON, Trustee for the Missouri Pacific Railroad Company, a Corporation, Appellant.—142 S. W. (2d) 486.

Division One, July 23, 1940.

578

*Thomas J. Cole* for appellant.

*Leo F. Laughren* for respondent.

DALTON, C.—This is an action for $25,000 damages for personal injuries sustained by plaintiff when he was struck by one of defendant's locomotives. The jury found for defendant and the trial court, on motion, granted plaintiff a new trial. Defendant has appealed from this order.

The record shows that a new trial was granted because of misconduct and improper and illegal behavior on the part of one of the jurors, Nicholas Georgopoulos, in that the juror was not a qualified juror, although he qualified on *voir dire* examination as such; that the juror was asked by counsel for the plaintiff if he, or any member of his family or intimate friends or relatives had ever been sued or was a party to a suit for damages as a result of bodily injuries sustained; that said juror answered, "No," when, in truth and in fact, the said juror had been sued by one Lasetta Thuneman on June 27, 1929, for $10,000 damages for injuries sustained by her when she was struck by an automobile owned and operated by said juror; that said suit was in the circuit court of the city of St. Louis, Missouri; that by reason thereof said juror was biased and prejudiced against the plaintiff and the plaintiff's cause of action and in favor of defendant, as said juror well knew; that said juror could not and did not give the plaintiff a fair and impartial hearing and trial; that he asserted his bias and prejudice and expressed the same to other jurors during their deliberations of the case; and that said bias and prejudice on the part of the juror was not known to plaintiff and his counsel until after the rendition of the verdict. The court's order followed the allegations of assignment No. 17 of the motion for a new trial.

The motion for a new trial was not verified, and no affidavits were filed with or in support of it, but the court heard evidence in support of the allegations of the motion. No record had been made of the questions and answers on the *voir dire* examination of the jurors, but one of plaintiff's attorneys, who conducted the examination of prospective jurors, testified that on the jury list was the name of Nicholas Georgopoulos; that this juror gave his residence and business, and said he was married and had a child five years old; that he was then asked if he or any member of his family or any of his close friends or associates had ever been sued in a case of this kind, that is, one for damages for injury inflicted to a person's body; that the juror answered, "No;" that he was then asked if he had ever had any experience in his life that would cause him to have a prejudice in a lawsuit of this kind and that the juror answered, "No." The witness (plaintiff's attorney) refreshed his recollection by reference to a jury list, and notes made by him at the trial of the case. He further stated that in examining the jurors he asked about suits where

persons were "struck or injured by a street car, automobile, falling down or any other way."

A deputy clerk of the circuit court testified that he saw Nicholas Georgopoulos present on the jury panel at the time of the *voir dire* examination; that the juror was reading a newspaper for several minutes during the *voir dire* examination; that he told the juror to put down the newspaper; that he talked to this juror when the juror went out and left his top coat on the rack and later came back and got it and put it in the clerk's locker; that from these conversations with the juror he recognized the juror's voice; that while the jury was out he (witness) went upstairs to a room used by witnesses, near the jury room; that as he went upstairs, and as he came downstairs, he heard a commotion in the jury room and heard voices coming from the jury room. Over appellant's objection he was permitted to state that when he got up to the landing the deputy sheriff was there (having gone there on account of the fact that there was a great commotion in the jury room) and that he (witness) heard someone in the jury room say in a loud voice, "Well, I talked this case over with my wife last night"; that later he heard this voice in the jury room say, "Well, how would you like that they put some iodine on your boy's foot and a shyster lawyer got ahold of him; he sued this man for $10,000 and got a judgment against him and the man had to sell out his business." The witness said that he recognized the voice as that of juror Georgopoulos.

In the hearing on the motion it was admitted by counsel for defendant that the records of the circuit court of the city of St. Louis showed that on or about June 27, 1929, the juror had been sued by one Lasetta Thuneman for $10,000 for personal injuries; that on January 16, 1935, a stipulation was filed and a judgment entered in said cause by consent in favor of the plaintiff and against the defendant for $100 and costs, with execution stayed for 60 days; that on May 17, 1927, one Bruno Spinelli had instituted a suit against Apostolos Georgopoulos, the father of the said juror, for $7500 and that said cause was later dismissed at plaintiff's cost.

There was evidence that after the jury went out to deliberate on the case that plaintiff's attorney was seated in the court room and that he heard a very loud noise and a commotion in the jury room; that the noise sounded as though someone was quarreling; that he heard the voice of one juror who was talking but could hear no one else; that the juror was speaking in a loud voice; that he saw the deputy sheriff leave the court room and heard him say, "It sounds like a fight to me." The attorney testified, however, that he had no information as to what went on in the jury room until after the verdict was rendered. The deputy sheriff was not produced as a witness.

In rebuttal defendant called Nicholas Georgopoulos. He testified

that he was not living with his wife at the time of the trial; that he did not see her during the trial; that he had been separated from her; that he did not tell the jury or any member of it that he had talked the case over with his wife; that he did not say anything to the jury about a boy who had sued somebody and put iodine on his foot; that he did not make any such statement; that on *voir dire* examination plaintiff's attorney had asked him, "There has never been any suit filed against you or any immediate member of your family and even if there had been it would not affect your judgment in this case would it?" that he answered "No;" that the attorney then asked, "You could give an impartial judgment without favor to one side or the other couldn't you; that he answered, "Yes, I could;" that he had entirely forgotten about the suit against his father; that he had nothing to do with the suit; that he didn't know what happened to it except that it was handled and settled by the insurance company; that he had nothing to do with the suit filed against him; that his attorney handled it; that judgment was rendered in favor of plaintiff for $100 by consent; that he had not paid the judgment but agreed to pay it; that at the time the judgment was rendered he was not working and had no income; that he would have disqualified himself if he had felt unqualified as a juror; that he could have gone back to work; and that he had no malice in mind whatever. On cross-examination he admitted that he was present in his attorney's office when the suit against him was adjusted, and it was further shown that he participated in the settlement.

The court cross-examined the juror at length: The juror testified that he was 30 years of age, married and had a child; that he was a graduate of Roosevelt High School and had had three years work at Washington University, that is, two years pre-legal work and one year of law. THE COURT: Q. "You mean to tell this Court that you have not paid that $100 or that it hasn't been paid by anyone else on your behalf? A. That's right, your Honor. Q. And you had that situation in mind when you came into this division as one of the eighteen men? . . . . A. No, your Honor, I didn't. Q. Didn't sit there as a venireman with the thought in your mind, with the knowledge in your mind that you yourself had been a defendant in a law suit? A. I did know that I had been a defendant, yes, sir. Q. That you had in that law suit recognized the right of the plaintiff and agreed with him that you would pay him $100? A. That's true, your Honor, but I still felt as though I was not prejudiced. Q. And you had the knowledge as you sat here in this division and this jury box that you had not paid that $100? A. Yes, I knew that, your Honor, but I still say it didn't prejudice me. . . . Q. You are equally positive that question asked you by counsel for the plaintiff on the *voir dire* examination was phrased exactly as you stated it? A. To the very best of my recollection

it was, 'Would it affect my judgment in this case.' Q. That was the second question, was it not? A. As I recall, your Honor, the question was two questions put together in one. Q. If that had occurred it would have been so unusual on the part of any lawyer that I certainly would have noticed it. Is it not a fact that, as you sat there as one of the eighteen men, that you heard questions put by counsel for the plaintiff in respect to their experiences in the matter of being sued or instituting causes of action themselves for damages? A. I heard him ask those questions. . . . Q. You heard that question propounded to every man that was on this panel? A. I suppose so. Q. Is it your idea to tell this Court each and every time counsel for plaintiff propounded that question he did it in the identical fashion that you claim he asked you? A. No, sir, I do not say that. Q. How else did you hear counsel for plaintiff ask this question? A. I heard him ask whether or not a juror had been sued—whether or not a juror or his immediate family or any relative of his, or any firm that he represented. I heard that phraseology used. . . . THE COURT: And you figured that by virtue of the fact that you had two years pre-legal and one year's study of law that you were sort of predestined to take charge of the jury and direct their consideration?" THE WITNESS: "Your Honor, that is not so. I suggested that someone else be made foreman. I did not seek the position of foreman."

The trial court, over defendant's objection that a juror could not be used to impeach the verdict, permitted plaintiff's counsel to cross-examine the juror at length as to what transpired in the jury room and about the use of the words "shyster damage suit lawyers." The court also inquired why the jurors "discussed building up cases and shyster lawyers." The juror admitted the words were used in the jury room but said he didn't think he used them; that he might have used them since someone suggested a verdict for plaintiff because of sympathy, but the words were not used in connection with the particular case.

The court in permitting the cross-examination of the juror stated that the court was interested in knowing what transpired in the jury room; that if there was anything irregular in the manner in which the jury did their duty or allegedly did their duty the knowledge of that fact was of paramount interest; that the court should know anything touching upon that which might have been irregular insofar as the conduct of the jury was concerned in arriving at a verdict in the case; that the court was interested in determining "whether or not anything of an irregular nature occurred in that jury room;" that "in an investigation of this kind, the court goes over and beyond any rule. . . . that supersedes all of the technical rules;" and that if anything irregular did happen the court should be permitted to hear it. The record further shows: "THE COURT: Would you

take the position that if something did happen there which was irregular that we are not permitted to hear it, that this Court cannot inquire, that that shall remain a secret and the verdict go to judgment, go as it is? . . . MR. COLE: I am telling you my understanding of the rule—that the jurors, in order to prevent this very thing, they have the right to retire to that jury room and discuss the case in private, without being overheard, without being snooped on, without talking about it after they get out of the jury room, without being brought from their business. . . . THE COURT: I have already suggested what I feel about that rule; so far as our conduct in this hearing is concerned that will be the rule.''

There was no allegation and no testimony that plaintiff or his counsel did not know of the existence of the suits against the juror, and the juror's father, at the time of the *voir dire* examination. There was an allegation that bias and prejudice on the part of the juror was not known to plaintiff or his counsel until after the rendition of the verdict and there was substantial evidence in support of this allegation.

█ Error is assigned on the action of the court in sustaining respondent's motion for a new trial. Appellant contends that when a motion for a new trial alleges misconduct or disqualification of a juror the motion must be verified by both counsel and client and must affirmatively show that neither counsel nor client knew of the alleged misconduct or disqualification prior to the verdict. Such a rule has been applied to motions for a new trial in criminal cases under Sec. 3734, R. S. 1929 (4 Mo. Stat. Ann. 3272). ''When a defendant moves for a new trial on the ground of misconduct of a juror which occurred during the trial, he must show affirmatively that both he and his counsel were ignorant of the misconduct until after the trial. The affidavit must be full and explicit, indicating whether he has personal knowledge of the facts, the sources of his information, and the reasons for his failure to secure the affidavits of other witnesses, if any.'' [State v. Flinn (Mo.), 96 S. W. (2d) 506, 513 (*citing cases*).] ''The rule is that such objection to a juror must be supported as well by the affidavit of counsel as of client; nothing less than this suffices.'' [State v. Howard, 118 Mo. 127, 136, 24 S. W. 41; State v. Trainer, 336 Mo. 620, 80 S. W. (2d) 131, 135; State v. Hunt, 141 Mo. 626, 637, 43 S. W. 389; State v. Mathews, 202 Mo. 143, 149, 100 S. W. 420; State v. Ferris, 322 Mo. 1, 11, 16 S. W. (2d) 96, 100.] However, in all of these cases the motion for a new trial had been overruled below and appellant was urging the same matters on appeal. Verification is ordinarily required where the motion for a new trial is based upon newly discovered evidence. [State v. Thurston (Mo.), 242 S. W. 908, 910 (citing cases); Devine v. Wells, 300 Mo. 177, 192, 254 S. W. 65, 70; MacCallum v. Wilson Printing Co. (Mo. App.), 221 S. W. 158, 159 (citing cases).]

Appellant relies upon the case of Western Roofing Company v. South

Park Baptist Church, 137 Mo. App. 101, 105, 119 S. W. 495, wherein, the court referring to a motion based on misconduct of a juror, said: "The motion, to have been effective, should have been sworn to by both defendant's counsel and the officer of the corporation who had charge of the case. There is the affidavit of no one made as to the truth of the allegations in the motion, and the motion is fatally defective in not stating that knowledge of the prejudice of the juror did not come to the defendant and its attorneys before the cause was submitted to the jury." In that case there was evidence that one of defendant's attorneys was not aware of the juror's prejudice until after the verdict. An order granting a new trial to defendant was set aside on appeal. We do not find that this case has ever been cited nor do we find that this court has so ruled in any civil case. It is, however, a familiar rule that allegations of a motion for a new trial with reference to matters outside of the record do not prove themselves and must be supported by proof. [Sennert v. McKay (Mo.), 56 S. W. (2d) 105, 109.] It has been held that the trial court in its discretion may hear oral evidence or permit the filing of affidavits in support of allegations in a motion for a new trial to the effect that a juror was biased and prejudiced and that such affidavits may be filed subsequent to the filing of the motion for a new trial. [Gibney v. St. Louis Transit Co., 204 Mo. 704, 717, 103 S. W. 43; Van Loon v. St. Joseph Railway, Lt., Heat & Power Co., 271 Mo. 209, 195 S. W. 737, 738; Harding v. Fidelity & Casualty Co. (Mo. App.), 27 S. W. (2d) 778, 779; Reissman v. Wells (Mo. App.), 258 S. W. 43, 46; Houts' Missouri Pleading and Practice, vol. 2, pp. 150-151.] It has also been held that a motion for a new trial on account of perjury or mistake of a witness need not be verified. [Ridge v. Johnson, 129 Mo. App. 541, 546, 107 S. W. 1103; Thompson v. B. Nugent & Bro. Dry Goods Co. (Mo. App.), 17 S. W. (2d) 596, 597.] By express statute a new trial may be granted upon "good cause shown." [Sec. 974, R. S. 1929 (2 Mo. Stat. Ann. 1247).] And there is no statutory requirement that a motion for a new trial shall be verified. [Secs. 1001, 1002, R. S. 1929 (2 Mo. Stat. Ann. 1262, 1264).] ██ It is our conclusion that the power and discretion of the trial court to hear evidence in support of the allegations of a motion for a new trial with reference to alleged misconduct or disqualification of a juror, or to grant a new trial on the basis of such testimony, so long as it exercises a sound judicial discretion, was in no way limited by the mere fact that the motion for a new trial was not verified by plaintiff or his counsel. Nor was the court limited in the exercise of its discretion to grant a new trial by the mere fact that there was no allegation or proof that plaintiff or his counsel did not know of the existence of the suits against the juror and his father, since there was both allegation and proof that prejudice existed; that neither plaintiff nor his counsel knew of the prejudice; and that plaintiff did not have

a fair and impartial trial. The case of Western Roofing Co. v. South Park Baptist Church, supra, insofar as it may hold to the contrary, is hereby overruled.

■ "Where it is shown that matters which might establish prejudice or work a disqualification were actually gone into on the *voir dire*, and false answers were given, or deception otherwise practiced the court will be permitted to consider the question on motion for a new trial." The fact that objection was not made to the juror or an exception saved is not controlling. [Harding v. Fidelity & Casualty Co., supra; Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S. W. (2d) 695, 697; Massman v. Kansas City Public Service Co. (Mo.), 119 S. W. (2d) 833, 837.]

■ The question here is whether or not the trial court in granting the new trial for the reasons assigned did so in the exercise of a sound judicial discretion and whether or not the exercise of its discretion rests upon a reasonable foundation in fact and upon competent evidence in the record or within the knowledge of the trial court. Appellant relies upon Naylor v. Smith (Mo.), 46 S. W. (2d) 600, 603; and Clack v. Kansas City Electrical Wire Subway Co., 138 Mo. App. 205, 210, 119 S. W. 1014. In these cases there was no showing that plaintiffs and plaintiffs' counsel did not have the particular information about the juror's alleged disqualification prior to the verdict, but in these cases the court overruled the motion for a new trial or at least that assignment of the motion was overruled. On appeal it was held that an abuse of the court's discretion was not shown. In this case the motion was sustained. It has been pointed out that a different rule obtains where a motion for a new trial has been sustained. "In examining the law upon this subject, care should be taken not to confuse the language of courts in approving the action of a trial court in refusing a new trial with language applicable to cases where a new trial has been granted." [Longdon v. Kelly, 51 Mo. App. 572, 576; Devine v. Wells, 300 Mo. 177, 187, 254 S. W. 65; Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126, 129 (3).] Appellate courts are also more liberal in upholding the trial court's action in sustaining a motion for a new trial than in denying it. [Aeolian Co. v. Boyd (Mo. App.), 138 S. W. (2d) 693, 695.] Here there was evidence from which the court could find that the particular juror had concealed material facts and there was evidence from which the court could infer that the juror was biased and prejudiced. The trial court was not bound by the testimony of the juror that he was not biased and prejudiced. [Bass v. Durand, 345 Mo. 870, 136 S. W. (2d) 988, 990; Gibney v. Transit Co., supra (204 Mo. l. c. 719, 103 S. W. 43).] In view of the action of the court in sustaining the motion we must conclude that the court found that prejudice resulted to plaintiff from this

juror's presence upon the jury and that plaintiff did not have a fair and impartial trial.

 Plaintiff was entitled to a hearing before a fair and impartial jury. His attorney was entitled to the information requested with reference to whether the juror or any members of his family had ever been sued for damages for personal injuries. If plaintiff's attorney was correct as to the questions asked on *voir dire,* and the court indicated he was, the juror intentionally concealed the fact of the suits against him and his father. The court saw the juror, heard his explanation as to his reasons for his answers, as well as the other competent matters in evidence. The prejudicial effect upon the plaintiff's case of this juror's presence upon the jury, and what was to be done about it, was within the sound judicial discretion of the trial court. We are of the opinion that this discretion was not abused. [Lee v. Baltimore Hotel Co., supra; Beers v. Martel, 332 Mo. 53, 55 S. W. (2d) 482, 484; Hoffman v. Dunham (Mo. App.), 202 S. W. 429, 431 (7); Paul v. Dunham (Mo. App.), 214 S. W. 263, 266.]

 Appellant further insists that the jurors were entitled to privacy in their deliberations; that the court erred in permitting the deputy circuit clerk to testify as to what he heard while outside of the jury room; that this evidence may not be considered; and that without this evidence the motion could not be sustained. No authorities are cited in support of this argument.

The rule in this State is that a juror will not be heard to impeach the verdict, whether the alleged misconduct occurred inside or outside of the jury room. [Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S. W. (2d) 47, 51 (citing cases); Evans v. Klusmayer, 301 Mo. 352, 256 S. W. 1036; Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960, 976; Bank of Malden v. Stokes, 220 Mo. App. 131, 280 S. W. 1055, 1057.] But we do not find that the rule has been further extended to exclude outsiders who happen to overhear the deliberations of the jury. In the case of Hoffman v. Dunham, supra (202 S. W. 429, 431), the affidavit of an outsider as to what a juryman said to him while the jury was excused for the night was held to be incompetent. The same rule applies to statements by jurors after their discharge. Such statements have also been excluded as hearsay. [Easley v. Mo. Pacific Railroad Co., 113 Mo. 236, 247, 20 S. W. 1073; Herring v. Wabash Ry. Co., 80 Mo. App. 562, 569; Proffer v. Miller, 69 Mo. App. 501; Bank of Malden v. Stokes, supra.] In the case of State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909, 912, a motion for a new trial was filed containing allegations with reference to conversations heard in the jury room, and with reference to disclosures of fact, not of record, by one juror to the other juror. The trial court heard the testimony of outside witnesses who overheard these conversations and disclosures. On

appeal, the competency of this evidence was not questioned, but on the basis of this evidence this court set aside defendant's conviction and remanded the case for a new trial. [See also: State v. Coleman, 264 Mo. 435, 440, 175 S. W. 209.] There is no evidence in the record of any improper conduct of the deputy clerk in securing the information. We hold that the evidence was competent. It was *aliunde* the jurors themselves. The trial court did not abuse its discretion in receiving the evidence. [Thompson v. City of Lamar, supra; Green v. Terminal Railroad Assn., 211 Mo. 18, 30, 109 S. W. 715.]

■ Appellant's final contention is that neither the court nor counsel had the right to make the searching inquiry of the juror as to what transpired in the jury room, and that the order granting a new trial should, therefore, be set aside. The court did make an extensive examination of the juror but little of the examination was directed to happenings inside the jury room. The court made some examination, and permitted plaintiff's counsel to make some examination of the juror as to matters happening in the jury room. This was improper. However, we are of the opinion, and so hold, that the improper examination of the juror by court and counsel did not destroy the power of the court within the reasonable exercise of its discretion to grant a new trial for the reasons assigned. [Reissman v. Wells, supra; Bank of Malden v. Stokes, supra.] In view of the fact that there is substantial evidence in the record upon which to base its ruling the order of the court in granting a new trial must be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.