**Mrs. Delila I. LAUGHERTY**

v.

**Mrs. Alice Thatcher NEWCOMB.**

**Civ. A. No. 4325.**

United States District Court
E. D. Tennessee, N. D.
March 27, 1962.

H. Calvin Walter and William R. Banks, Knoxville, Tenn., for plaintiff.

Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., for defendant

ROBERT L. TAYLOR, Chief Judge.

Following a verdict for the defendant in this cause, plaintiff filed a motion for a new trial stating (1) that the verdict was contrary to law, (2) that there was insufficient evidence to support the verdict, (3) that the verdict was against the weight of the evidence, (4) that there was misconduct of a member of the jury and of a spectator and (6) that there was misconduct of a member of the jury in that he failed to disclose on Voir Dire that he was a defendant in a lawsuit in Roane County at the time he was questioned.

Without going into detail, the Court is of the opinion that the verdict is not contrary to law and is supported by substantial evidence. Grounds (1), (2) and (3) are overruled. Ground (5) was stricken from the motion and was not presented to the Court.

Ground (4) was supported by the affidavit of the plaintiff (Mrs.) Delila I. Laugherty, Exhibit "A", which is copied in full:

"I, Delila I. Laugherty, being duly sworn, depose and say:

"That I am the plaintiff in the above entitled action. During the trial of this case, and at the time the jury was out deliberating, a Mr. Spears, a man whom I did not know, approached me and stated that he had attended the trial with Bob Delaney, one of the jurors; that he, Mr. Spears, worked for the American National Insurance Company. Mr. Spears then asked me if I knew that I would not get anything in this case. After that he went over and talked to the defendant for a long period of time."

Ground (6) was supported by the affidavit of plaintiff's attorney, H. Calvin Walter. This affidavit is Exhibit "B" to the motion and is copied in full:

"I, H. Calvin Walter, being duly sworn, depose and say:

"That I am attorney for the plaintiff in this action, and that my investigation has disclosed that Bob Delaney, an ex-sheriff of Roane County, and one of the jurors in the above entitled case, is presently a defendant in a damage suit in the Circuit Court for Roane County, Tennessee, styled: *State of Tennessee, for the use and benefit of William T. Ferguson v. Robert N. (Bob) Delaney and Travelers Indemnity Company,* in the amount of $20,000.00. The Docket No. is 2016."

On Wednesday, February 28, the Court held a hearing in open Court at which the parties were represented by their counsel and at which the spectator and Juryman

Bob Delaney were interrogated at length by counsel for both parties.

At this hearing, it developed that the spectator's name was not Spears but Seay, John Walter Seay, Jr. He testified that he lived in Kingston, was a friend of juryman, Bob Delaney, and that they drove to Knoxville together on the day of the trial. Seay testified that his purpose in coming to Knoxville was to see his sister, that she was not at home and that he came to the Courtroom and sat as a spectator. At the noon recess, he had lunch with Delaney and one other juryman. Both Seay and Delaney stated emphatically that the case was not discussed while they were at lunch.

After the jury was charged and retired, Seay remained in the Courtroom and became engaged in conversation with William Banks, the attorney who filed the case for Mrs. Laugherty, but who did not participate in the trial. In the course of the conversation, they speculated as to what the jury might do and Seay was of the opinion it would find for the defendant. He testified that plaintiff may have walked up and that he may have expressed the same opinion to her but stated emphatically that it was expressed in informal conversation, while everybody was waiting for the jury, and that he did not seek out plaintiff.

Delaney and Seay were placed under the Rule at the interrogations. Delaney confirmed that he and Seay, a former highway patrolman, were friends, had driven in together the morning of the trial and again on the morning of the interrogations. He confirmed that they had lunch together with another juryman, and affirmed that they neither discussed nor talked about the case.

■ Both witnesses were forthright in their answers and the Court is satisfied that Seay's presence and activities in the Courtroom on the day of the trial and his luncheon engagement with Delaney and the other juryman were coincidental, involved no wrongdoing and had no influence on the outcome of the trial. Ground No. 4 is overruled.

■ We come now to the more pressing question whether Delaney was guilty of misconduct in failing to disclose on Voir Dire that a suit was then pending against him in the State Court in Roane County, Tennessee. At the hearing it developed that Delaney, a former sheriff of Roane County, was sued because of the activities of one of his deputies while he was sheriff. He testified that he understood Mr. Walter's question, whether any lawsuits were pending against members of the jury panel, related to suits in the Federal Court. He testified that he had no cases pending against him in the Federal Court and hence remained silent as to that question and that he had no intention of concealing the fact. He testified that the fact a suit was pending against him did not affect his decision on the jury.

The Court is satisfied that Mr. Delaney's conduct was innocent and that he honestly misunderstood the question. It is further convinced that the fact that Delaney was defendant in a state court did not influence in any way his deliberations as a juryman.

But plaintiff's counsel argues that he had an unused peremptory challenge and would have used it against Delaney had he known all the circumstances.

In support of his position that plaintiff is entitled to a new trial, counsel cited one case, that of Kerby v. Hiesterman, 162 Kan. 490, 178 P.2d 194. In that case, the prospective jurors were asked on voir dire by defendant's counsel whether either of the attorneys for plaintiff had recently been counsel for any of them. Juror Skipton who later became foreman was asked such question and replied in the negative. This answer was false in that Skipton had asked one of the plaintiff's attorneys to prepare and file a complaint for forcible detention of a small house renting for $10.00 a month. Counsel prepared the complaint but the matter was so trivial he advised he would make no charge for his work unless the case went to trial. The occupant moved before the case went to trial and counsel for plaintiff did not see Skipton from the

date he prepared the complaint until he appeared as a prospective juror in the Kerby case.

Defendant filed a motion for a new trial giving as one reason that the foreman had been guilty of misconduct and disqualified to act as a juror. In its memorandum overruling the motion for a judgment n. o. v. and for a new trial, the trial court said, "It would be difficult to conclude that this fair-minded representative jury panel * * * was improperly and unduly influenced to return the verdict in this case because of overreaching by one juror whose sole interest is apparently asserted to have been, to favor one of counsel for plaintiffs by returning a verdict in favor of one of his clients."

In reversing the ruling, the Supreme Court of Kansas observed that denial of a motion for a new trial on account of alleged misconduct by the jury is generally a matter within the discretion of the trial judge. But in granting a new trial quoted with approval from the opinion of the Kentucky Court of Appeals in Drury v. Franke, 57 S.W.2d 967, that the right of peremptory challenge of a juror " 'includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired; a verdict is illegal when a peremptory challenge is not exercised by reason of false information; the question is not whether an improperly established tribunal acted fairly, but * * * whether a proper tribunal was established; * * * next to securing a fair and impartial trial for parties, it is important that they should feel that they have had such a trial * * *.' "

In his brief, counsel for plaintiff cited 39 Am.Jur., Sec. 45, page 66; Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 88 A.L.R. 917, and Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795. The facts in the cited cases are distinguishable from the facts in the instant case.

Other courts, including the Tennessee courts, have been less prone to grant new trials where it has developed that strictly truthful answers have on occasion not been given by jurors on the voir dire. The considerations on the other side are well stated in Orenberg v. Thecker, 79 U. S.App.D.C. 149, 143 F.2d 375. In that case, questions relating to claims for personal injuries previously suffered by jurors were propounded to the jurors and two jurors remained silent. The Court said 143 F.2d at pages 377–378:

"The questions propounded to the panel—and in response to which two jurors remained silent—were: (1) 'Have any of you ever been plaintiffs in a case involving personal injuries in an automobile accident, or any other kind of accident? Have you ever presented a claim against anyone for personal injuries, whether arising out of an automobile accident or an accident in a store, apartment house or hotel?' and (2) 'Is there anyone else who has had a claim of any kind involving personal injuries?' It can be too easily assumed that laymen, called from ways of life far removed from the courtroom, will understand words and terms of art customarily used by lawyers and judges. As a matter of fact, many such words are not well understood by lawyers and judges themselves. It would be a violent assumption that such laymen will be alert to give considered answers to questions containing several such words or terms, or that failure to respond constitutes concealment or a false answer. For example, even to lawyers and judges, such words as *claim* and *presented* have varied meanings. Some laymen, who have had no courtroom experience, do not know the meaning of *plaintiffs, personal injuries* and other words which were used in the questions propounded by counsel for appellants. Within the last year this court had occasion to decide a dispute between able counsel as to the meaning of the words plaintiff and

defendant, as used by Congress in recent legislation. It would be asking a great deal of laymen that they be certain and confident in the use of lawyers' words when lawyers themselves disagree as to their meaning. It would be grim irony to insist that our juries must constitute a representative cross section of all the people if at the same time impossible standards of performance were imposed. Moreover, in the present case, the questions propounded were not directed to each venireman separately. Instead, they called for voluntary responses upon the initiative of each. Many lawyers, remembering their own first appearances in court, will understand the trepidation of a layman who, for perhaps the first time in his life, occupies the spotlighted position of the jury box; and his reluctance to discuss with able counsel, abstract legal issues such as those implicit in the questions propounded in the present case. These are the considerations which must be kept in mind in determining whether there was such giving of false answers or concealment of material information as to constitute misconduct and require, so compellingly, the granting of a new trial as to establish abuse of discretion upon the part of the trial judge * * *"

In Stanczak v. Pennsylvania R. Co., 174 F.2d 43, 48 (C.A. 7), the Court of Appeals in upholding the denial of the motion for a new trial said:

"The record is not convincing that the juror intentionally failed to answer the court's question truthfully. It would appear more likely that he did not comprehend the scope of the question or that he was guilty of failing to listen carefully and thus failed to understand its purport. A thoughtful answer would have disclosed the information the court sought. The trial judge, in exercise of his discretion, overruled the motion for a new trial. In Illinois the law seems to be that the true test in .

such case is not whether the prospective juror answered truthfully the question put to him, but, 'Has the petitioner been prejudiced in the case?' * * * *"

In Johnson v. Hill, 274 F.2d 110, 116, (C.A. 8), the Court said:

"* * * There is no showing of intentional deception on the part of the juror; the involvement of the juror's son in prior litigation having its origin in an automobile collision does not, in and of itself, furnish adequate legal basis for us, as a reviewing court, to interfere with the considered action of the court in permitting the judgment to stand. The trial judge, in the first instance, has the responsibility and duty to so supervise and conduct litigation proceedings as to afford all parties a fair and impartial trial to the end that justice is served. The record satisfies us that the trial judge followed this mandate. He made an investigation of the alleged misconduct of juror Strege and reached the conclusion that the verdict was not improperly influenced. Our rule is that '(a) motion for a new trial is always directed to the sound discretion of the trial court. It is only for a clear abuse of that discretion that an appellate court will reverse.' Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288. As we have seen, the verdict finds ample support in the evidence that was presented to the jury, and we find no abuse of discretion in the denial of a new trial."

In Truitt v. Travelers Insurance Company, 175 F.Supp. 67, 72, (U.S.D.C.Texas), the Court said:

"As its fifth ground for new trial defendant maintains that its substantial rights were materially affected by the presence of jurors on the jury who failed to disclose claims and back complaints on voir dire, though they were specifically asked about these matters. Plaintiff contends that the mere fact of a similar complaint and/or a prior claim is not

prima facie evidence that the rights of defendant have been prejudiced and that there must be an affirmative showing of injury by the complaining party. In personal injury actions, such as the present case, the rule has been well stated in Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 1958, 257 F.2d 111:

> " '* * * the act of a juror in the course of his voir dire examination in innocently or inadvertently giving or withholding insignificant information in respect to claims or actions for damages by or against himself or his immediate relatives, though false, does not require the granting of a new trial *unless the unsuccessful litigant was prejudiced in his case.*' (Emphasis added.) Carver, supra, at page 115."

> \* \* \* \* \* \*

"There has been no showing of prejudicial circumstances or any details of the back complaints or prior claims on which defendant would challenge the competency of the jurors, nor has there been any indication that defendant was prejudiced in his case. For this reason the court endorses the language and logic expressed in Orenberg v. Thecker, 1944, 79 U.S.App.D.C. 149, 143 F.2d 375, in which the philosophy underlying the security of verdicts solemnly made and publicly returned is clearly stated. Defendant's motion for judgment or new trial on this ground will be denied."

See also cases collected in 38 A.L.R.2d 631, sec. 6 and in 63 A.L.R.2d 1059, 1961 et seq.

The annotation appearing in 63 A.L.R. 2d 1061 follows the report of the Tennessee case of Thomas v. Hodges, 201 Tenn. 313, 299 S.W.2d 1, 63 A.L.R.2d 1059, which, insofar as the facts are concerned, is very similar to the case at bar. In the Thomas case, a juror failed to disclose on voir dire examination that he had been sued as a partner when asked along with others whether any of them had been defendant in a lawsuit. The Court. citing the Tennessee statute TCA § 27–116 held this was harmless error where it appeared that the juror had been unbiased and that plaintiff had received a fair and impartial trial. Counsel there made the same argument made before us that had the true facts been known he would have used his remaining peremptory challenge to exclude that juror.

Although this Court recognizes that this Tennessee statute is not binding upon it, it is nevertheless influenced by the sound reasoning which lies back of it, namely that the desideratum back of all lawsuits is the achievement of a fair and impartial trial rather than the almost impossible attainment of perfect procedures in a world of honest and well-meaning, but imperfect, human beings.

The sixth ground for a new trial is likewise overruled.

For the reasons indicated herein, plaintiff's motion for a new trial must be overruled. An order has accordingly been passed to the Clerk overruling the motion.