Omer B. DUFFENDACK, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 31134.

St. Louis Court of Appeals.

Missouri.

Feb. 19, 1963.

Donald W. Bird, Gerald D. Morris, St. Louis, for defendant-appellant.

Hullverson, Richardson & Hullverson, Everett Hullverson, Corinne Richardson, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff's action, in two counts, is for personal injuries and property damages claimed to have resulted from a collision between plaintiff's automobile and defendant's motorbus. Trial before a jury culminated in a verdict and judgment in favor of plaintiff for $5,000 for personal injuries and for $965.95 for damages to plaintiff's car. Its after-trial motions being unavailing, defendant appealed to this court.

The collision in question occurred on September 19, 1960, about 1:45 P.M., in Kirkwood, Missouri, at the intersection of Adams Street, an east-west street, and Kirkwood Road, a north-south thoroughfare. The weather was clear and the streets dry. Traffic at the intersection was controlled by electric signals, so set that southbound and eastbound traffic never had a red or green light at the same time.

Plaintiff, a retired Methodist minister, operating his 1959 four-door Cadillac sedan southwardly on Kirkwood Road, in obedience to a red light, came to a stop in the curb lane with his bumper approximately even with the north curb of Adams. While plaintiff was stopped he noticed the bus in question on Adams, headed east, and stopped about 12 or 14 feet west of the west curb of Kirkwood Road. After he had been stopped some 5 to 10 seconds the light facing him turned green, and plaintiff started forward. Plaintiff was some distance into the intersection when he saw the bus start eastwardly, but thought it was merely rolling up to the curb line to stop there. When he was practically at the center line of Adams he realized that the bus wasn't going to stop, momentarily touched his brake, and then stepped on the accelerator and swerved in an effort to get out of the way of the bus. The front of plaintiff's car was "practically to the south side of Adams Street" when the bus struck it a rather violent blow, right square in the center of the right doors.

Defendant raises four points on appeal, the first of which is that plaintiff was guilty of contributory negligence as a matter of law. A plat introduced by defendant, and accepted as accurate by plaintiff, showed Adams Street to be 43 feet 4 inches wide. Starting with plaintiff's testimony on cross-examination that "After I had gotten out practically to the middle * * *" of Adams when he realized that the bus was not going to stop for the red light, defendant, using various estimates of plaintiff and its own bus driver, argues that plaintiff could have stopped approximately 2 feet short of the path of the bus. Thus defendant contends that the bus was stopped "About two feet" from the south curb of Adams (one of defendant's bus driver's estimates); that the bus was 8 feet wide (the bus driver's estimate); that the left side of the bus was thus 11 feet 8 inches from the center of Adams (predicated on the bus driver's estimates); that plaintiff testified he was "practically" to the middle of Adams, and therefore plaintiff meant he had not yet reached the center, so that he had 12 feet in which to stop; that plaintiff was then traveling 10 miles an hour (one of plaintiff's estimates); and that at that speed he could stop in 10 feet, including reaction time (another of plaintiff's estimates). Of course, plaintiff is not conclusively bound by his *estimates* of speed, position, and stopping distance. McDonough v. St. Louis Public Service Co., Mo., 350 S.W.2d 739; Appelhans v. Goldman, Mo., 349 S.W.2d 204; Davis v. Kansas City Public Service Co., 361 Mo. 168, 233 S.W.2d 669, much less by the testimony of the defendant's witness' estimates of distances, Hall v. Clark, Mo., 298 S.W.2d 344. Furthermore, defendant's argument assumes a fact not in evidence, that the bus traveled directly forward after it started up; and that assumption, in turn, appears to be in conflict with the driver's testimony that plaintiff's car was "About the center * * *" of Adams when he first saw it and that his bus was then just four or five feet from it. A plaintiff's contributory negligence is ordinarily a jury question unless it may be said from all the evidence and the

reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury. Dye v. Geier, Mo., 345 S.W.2d 83; Kickham v. Carter, Mo., 314 S.W.2d 902. Whether plaintiff was guilty of negligence in failing to attempt to stop was, under all the evidence, a jury question.

Defendant next complains that plaintiff's instruction No. 11 submitted an erroneous measure of damages to plaintiff's car, in that it permitted the jury to assess this item of damages on the basis of the cost of repairs. Having failed to raise such a specific objection at the trial before submission of the case to the jury, or in its motion for a new trial, defendant is scarcely in a position to do so here. Civil Rules 70.02, 79.03 and 83.13, V.A.M.R. Hartz v. Heimos, Mo., 352 S.W.2d 596; Sullivan v. Hanley, Mo.App., 347 S.W.2d 710. Furthermore, plaintiff testified he had expended the sum of $965.95 for repairs. Defendant did not object, and cross-examined plaintiff as to the damages to the automobile. It was in evidence that the car was a 1959 Cadillac and in good condition before the collision in question. Defendant's point was decided adversely to it by the Supreme Court in Oberhaus v. Eichwald, Mo., 303 S.W.2d 29, and by this court in General Exchange Ins. Corp. v. Young, Mo.App., 206 S.W.2d 683 aff. 357 Mo. 1099, 212 S.W.2d 396.

Defendant next contends that it was denied a fair trial by an impartial jury because one of the jurors on voir dire examination intentionally concealed the fact that he had previously collected money for an injury he had received in the course of his employment. At the start of his interrogation of the panel trial counsel for defendant (who is not counsel for defendant on this appeal) stated:

"* * * I would like to ask to begin with one question individually of each of you, which has been touched upon by Mr. Hullverson, which I would like to go into a little bit more fully. That question is, and I will explain it to you before I ask it of you individually, have you or any member of your family ever had a claim, a workmen's compensation claim, or a lawsuit—either of the three—either for personal injury or property damage, against any person, corporation or individual? By claim, I mean any incident where you have asked for money because of some damage or injury to you or your property or you have been paid money for some damage to you or your property, or some injury. I would like to start with Mrs. Herrmann in the back. You told about the prior claim against Public Service Company?"

Counsel then asked Mrs. Herrmann whether she had been involved in any other "claim or lawsuit or workmen's compensation case * * *," and received a negative answer. Juror No. 2 was asked whether he had ever had a "claim or lawsuit against any company * * *." Counsel then reached Juror No. 3, and inquired: "Mr. Johnston, I would like to ask you the same question, sir? and Johnston responded: "No claims." Counsel: "Q. No claims either you or your family or lawsuit?" Johnston: "No." Four jurors interrogated after Johnston stated that they had had workmen's compensation claims, but were not then asked any details thereof. No juror was asked individually whether he had ever received money or compensation under the Workmen's Compensation Act without filing a claim, nor was the panel asked that question collectively.

At the hearing on defendant's motion for a new trial Johnston was asked by defendant's trial counsel whether he had had "a prior workmen's compensation claim * * *" and replied: "By claim, I don't know exactly what you mean there." When asked whether he had received some money for an injury sustained while at work he recalled that in 1952 he was in-

jured while working, was off five weeks, and after the first two weeks had been paid $30 a week for three weeks but " * * * I had to file no claim, whatsoever, for it, * * *." He stated that he endeavored to truthfully answer the questions asked him on voir dire; that at the time of interrogation he had completely forgotten about the payment he had received (9½ years prior to the trial); that it did not occur to him during the trial, nor during the jury's deliberations; and that if it had, it would have made no difference in his verdict. Mr. George Hagemann, St. Louis Claims Manager for the employer's compensation insurer, confirmed that Johnston had been paid $90 because of an accident which occurred on March 28, 1952. He also confirmed Johnston's testimony that Johnston had not made or filed any claim, and stated that, as was usually done, " * * * the employer takes care of everything, seeing the man paid."

■ In a matter of this kind the decisive question is whether the venireman was guilty of giving false answers or of an intentional concealment or failure to disclose information, and the determination of that question is primarily left to the sound discretion of the trial court, reviewable only for abuse. Begley v. Adaber Realty & Investment Co., Mo., 358 S.W.2d 785; Hornberger v. St. Louis Public Service Co., Mo., 353 S.W.2d 635; Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795; Triplett v. St. Louis Public Service Co., Mo.App., 343 S.W.2d 670. A misconception by a venireman of the word "claim" as used by counsel, or a momentary forgetfulness of an event which had transpired, as here, 9½ years before the interrogation, justified the trial court in believing that there was no intentional concealment, misrepresentation, deception, and prejudice. Barb v. Farmers Ins. Exchange, Mo., 281 S.W.2d 297. We find no abuse of its discretion. Begley v. Adaber Realty & Investment Co., supra; Hornberger v. St. Louis Public Service Co., supra; Hampy v. Midwest Hanger Co., Mo.App., 355 S.W.2d 415.

■ In its final point defendant criticizes plaintiff's instruction No. 6, which informed the jury that the burden of proving the plaintiff's contributory negligence was upon the defendant. No objection is raised to the instruction as an abstract proposition of law. The specific and sole complaint made is that it deprived defendant of the benefit of evidence offered by plaintiff, tending to show contributory negligence on his part, by failing to inform the jury that they could and should consider such evidence in determining the question. Precisely the same objection was raised by the defendant to a similar instruction in Murray v. Missouri Pacific Ry. Co., 101 Mo. 236, 240, 13 S.W. 817, 818, where in rejecting the criticism the court said: " * * * There is nothing, however, in the instruction which deprives the defendant of the benefit of this evidence. It does not say that the defendant must show contributory negligence by the evidence of witness, introduced by itself. The jury are left to determine the question from all the evidence, no matter by whom offered." To the same effect see Tinkle v. St. Louis & San Francisco R. R. Co., 212 Mo. 445, 110 S.W. 1086; Lanasa v. Downey, Mo. App., 201 S.W.2d 179; Davis v. Missouri Elec. Pwr. Co., Mo.App., 88 S.W.2d 217; Beane v. City of St. Joseph, 211 Mo.App. 200, 240 S.W. 840; Maguire v. St. Louis Transit Co., 103 Mo.App. 459, 78 S.W. 838. Furthermore, the jury could not have been misled because defendant's instruction No. 4 in submitting the issue of plaintiff's contributory negligence hypothesized and was predicated on plaintiff's testimony.

The judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

WOLFE, Acting P. J., JACK P. PRITCHARD and J. MORGAN DONELSON, Special Judges, concur.